Filed 10/5/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WILLIS E. URICK, III,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DANA URICK, as Trustee, etc.,<br><br>    Defendant and Respondent. | B278257<br><br>(Los Angeles County<br>Super. Ct. No. BP171001) |

APPEAL from order of the Superior Court of Los Angeles County, Lesley C. Green, Judge.  Reversed.

Meserve, Mumper & Hughes, Michael A. Angel and Cliff Melnick, for Plaintiff and Appellant.

Sacks, Glazier, Franklin & Lodise, Robert N. Sacks and Eunice Y. Lim, for Defendant and Respondent.

———————————————

A beneficiary filed a petition for instructions as to whether the "no contest" clause of his mother's trust had been violated after his sister sought to reform the trust to eliminate his interest. The sister, in her capacity as trustee, filed a special motion to strike the petition under Code of Civil Procedure section 425.16 (the anti-SLAPP statute),[1] which the probate court granted. On appeal, the brother recognizes that petitions to enforce a no contest clause under the Probate Code necessarily satisfy the first step of the anti-SLAPP analysis, because they are based on protected petitioning activity. He contends that petitions to enforce a no contest clause should be exempt from the anti-SLAPP statute, however, because applying the anti-SLAPP statute in this context undermines the purposes of both statutory schemes. He also contends that he showed a probability of prevailing under the second step of the analysis, because his sister filed the reformation petition in her individual capacity, it was a direct contest and the grounds included fraud, and she had no probable cause to file it. Although we appreciate the strength of the argument in favor of exemption, the plain language of the anti-SLAPP statute applies to a petition to enforce a no contest clause. We conclude, however, that the brother established the minimal

---

[1] SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.)

merit necessary to show a probability of success at this stage of the proceedings.  The order is reversed.

## FACTS AND PROCEDURAL HISTORY

### Allyne Urick's Estate Plan

On March 8, 2013, Allyne Urick executed the Allyne L. Urick Trust Agreement.[2]  On her death, her daughter Dana Urick would be the successor trustee.  If Dana should cease to serve, Allyne's son Willis E. Urick, III would serve as trustee.  The trust was structured as a charitable remainder annuity trust, which pays a fixed amount of income to the donor's beneficiaries and gives the remainder to a charity.  At Allyne's death, after certain payments and distributions from the trust estate, the remaining trust principal would be annuitized and the income distributed in equal shares to Willis, Dana, and Dana's son Trentyn Urick-Stasa.  Upon termination of the annuity, the remaining principal would be distributed to Phillips Academy Andover, "In Memory of Willis E. Urick, Jr., Class of 1934."  Allyne executed a pour-over will as well.

On January 3, 2014, Allyne addressed a handwritten note "[t]o whom it may concern," which stated, "I hereby

---

[2] Because the parties and the decedent share the same last name, they will be referred to individually by their first names for clarity.

delete my son Willis E. Urick III from the assets of my Family Trust, established March 8, 2013. [¶] I have shared my reasons in a document which is in a sealed envelope, to be opened and read in the event of a contest."

On August 6, 2014, however, Allyne executed an "Amendment and Full Restatement of the Allyne L. Urick Trust Agreement dated March 8, 2013." It stated that its provisions "shall control over all earlier statement of the Trust provisions." Dana was appointed as the successor trustee. If she ceased to serve, Wells Fargo Bank was named as successor trustee. The restated trust was also a charitable remainder annuity trust. After certain payments and distributions from the trust estate, the remaining principal was to be annuitized and the income generated would be distributed in equal shares to Willis, Dana, and Urick-Stasa. Payment of the annuity amount was to cease "upon the earliest of [Urick-Stasa] attaining the age of thirty-five (35) years, upon the death of the last surviving named recipient of a share of the annuity amount or upon the latest date allowed by Internal Revenue Code §[]664." Distributions to Urick-Stasa were to be held in trust and distributed on a schedule. When the payment of the annuity amount ceased, the remaining principal and any undistributed income was to be distributed to Phillips Academy in memory of Willis E. Urick, Jr., Class of 1934.

The trust contained a no contest clause providing, "In the event that any Beneficiary or other individual who is specifically not named as a Beneficiary, including

4

grandchildren or spouses of the Trustor's children, shall contest any aspect of this Trust or attempt to set aside, nullify, or void the Trust or the distribution thereof in any way, whether successfully or unsuccessfully, then the Trustor directs that such rights of such person shall be ascertained as it would have been determined had that person predeceased the execution of this instrument without living issue."

Dana was appointed as the successor trustee under the trust. Allyne passed away on August 18, 2015, and Dana assumed the role of trustee.

## Petition for Reformation of Trust

On February 16, 2016, Dana filed a petition to reform the trust under Probate Code sections 17000, subdivision (b)(1), and 17200, subdivisions (b)(3), (b)(4), and (b)(13)–(14). The petition stated that "Petitioner, Dana Urick, Trustee of The Allyne L. Urick Trust," sought to reform the trust on the grounds that its terms were misrepresented by the drafter, Allyne had mistakenly signed the trust believing it reflected her intent, and the trust did not contain the distribution plan that she requested of the drafting attorney. The petition noted that mistake of law is a ground for reformation under Civil Code sections 1578, and that a written instrument may be reformed on the application of an aggrieved party under Civil Code section 3399. Dana proposed to reform the trust to correctly state the trustor's

intent as follows: after distributing specific bequests and personal property, the remaining principal would be divided into two shares, with one share for Dana and one for Urick-Stasa. The assets would be held in trust for 10 years, then distributed outright to Dana and Urick-Stasa. If no beneficiaries survived, the assets would be distributed in equal shares to four institutions, one of which was Phillips Academy. No mention was made of the distribution to Phillips Academy being in memoriam.

The attorney caption at the top of the petition and the attorney signature block on the final page stated that the attorneys represented Dana, but did not mention her role as trustee. Dana signed a verification of the petition which did not state that she was signing it as trustee.

Dana attached several documents to the reformation petition, including a letter to Allyne from her attorney Mark Boykin dated December 14, 2012. Boykin confirmed that Allyne wanted her son and daughter to receive a fixed percentage of her estate in the form of an annuity for the rest of their lives and wanted her grandson to receive a substantial sum in trust, with the remainder to Phillips Academy. She wanted to reduce potential estate taxes, but was more concerned about providing for her grandson and not having her children receive a large sum of money at her death.

In a letter dated January 7, 2013, Boykin provided Allyne with a draft of the trust. He confirmed that Allyne wanted Willis and Dana to receive an annuity of five percent

of her net estate for their lifetimes, with the remainder to Urick-Stasa. Allyne responded that she wanted Urick-Stasa to have an equal annuity share to her children. Boykin explained that he could complete the trust as she asked, but giving Urick-Stasa a present annuity interest in addition to the remainder interest could lead to substantial additional taxes.

In a letter dated February 6, 2013, Boykin enclosed a draft for Allyne. He explained that he used a charitable remainder trust based on their telephone conversation in which she stated that she wanted Phillips Academy to receive the remainder, even though the gift would probably not qualify for charitable treatment.

Allyne signed the trust on March 8, 2013. The trust was funded with her residence, an apartment building, and several investment accounts. She had a number of bank accounts payable on death through beneficiary designations which were not placed in the trust.

After Allyne's handwritten note on January 3, 2014, expressing her intent to disinherit Willis, Boykin prepared an amendment to the trust that made Dana the sole trustee and distributed annuity amounts to Dana and Urick-Stasa only. The amendment was never signed. He prepared a similar amendment in February 2014, which was also never signed. In August 2014, Boykin prepared the fully restated trust, which Allyne executed.

Willis and Phillips Academy each objected to the reformation petition.

## Petition for Instructions as to Violation of No Contest Clause

On May 31, 2016, Willis filed a petition for instructions as to whether Dana's petition violated the no contest clause of the trust. He argued that the reformation petition was a direct contest to invalidate the distributive provisions of the trust on the basis of fraud, undue influence, and duress, in violation of Probate Code section 21310, subdivision (b)(4). Willis sought instructions from the court as to whether the reformation petition constituted a direct contest under Probate Code section 21310 et seq., and whether Dana lacked probable cause to file the petition.

## Anti-SLAPP Motion

On August 4, 2016, Dana filed an anti-SLAPP motion in her capacity as trustee. She argued that the anti-SLAPP statute applied because filing a petition to reform the trust was protected litigation activity under the anti-SLAPP statute. Willis could not show a probability of prevailing on the merits, because: (1) she filed the reformation petition in her capacity as trustee; (2) it was not a direct contest, because she sought to reform the trust on the ground of mistake; and (3) she had probable cause for filing the petition.

8

## Opposition to Anti-SLAPP Motion

Willis opposed the anti-SLAPP motion. He argued that the anti-SLAPP statute should not apply to the no contest provisions of the Probate Code. Even if the statute applied, he had a reasonable probability of prevailing on the merits. The evidence showed Dana filed the reformation petition in her individual capacity as a beneficiary rather than as an independent trustee. In her petition, for example, she alleged standing as an aggrieved party under Civil Code section 3399. Dana could only claim to be an aggrieved party in her capacity as a beneficiary. Dana's petition was a direct contest because it sought to invalidate the distributive provisions of the trust by disinheriting her brother and the charity. She lacked probable cause because the restated trust had superseded the handwritten amendment disinheriting Willis.

Boykin had videotaped Allyne's execution of her original estate plan in 2013. Willis submitted a transcript of the discussion and the execution of the documents. Allyne stated that she did not want to leave her estate outright to her two children. Boykin explained that Dana, Willis, and Urick-Stasa would receive five percent of the trust for the rest of their lives, or until Urick-Stasa reached age 35. Allyne corrected him and said it would be five percent for each child. They went off the record. On the record, Boykin stated, "Mrs. Urick, you and I had a discussion off the record about your desires for the distribution of your estate."

Allyne answered, "That's correct." Boykin continued, "And it's not five percent to each of your three children." Allyne said, "I understand that now." Boykin responded, "And you understand that it's five percent of the entire value of the trust every year." Allyne answered, "Correct." Boykin added, "Split three ways." Allyne said, "Right. Got it." Boykin asked, "And that's what you want to do?" Allyne said, "Yes, I do." Boykin said, "Okay." Allyne added, "That is quite a bit of money from where I am sitting." Boykin continued, "All right. And then that is going to continue until both of your children have passed away and [Urick-Stasa] attains age 35 years; correct?" Allyne said, "Correct."

Boykin asked, "Then what do you want to have happen to the trust fund? [¶] Where would it be distributed at the point [Urick-Stasa] reached 35?" They had a discussion off the record about the length of time that the annuity would be paid to Urick-Stasa. Allyne thought she might want to extend it. She wanted to confer and ask for Boykin's advice. Boykin explained that the remainder going to Phillips Academy would not be zero, and would probably be somewhere between three and ten million dollars. Allyne responded, "Oh, that's a lot of dough right there." She decided that they would have to give some consideration to the distribution, but at present she would leave it as it was written. Before Allyne signed the documents, Boykin asked if she had an opportunity to review them that morning and previously. She said that she did. Boykin asked, "And we had discussion about [Urick-Stasa's] distribution at age 35?"

10

Allyne said they had. Boykin asked, "And you are now okay with that; correct?" Allyne answered, "Yes. At the present time. Yes." Allyne signed the documents.

**<u>Reply and Trial Court Ruling</u>**

Dana, in her capacity as trustee, filed a reply. She filed a notice of joinder in her individual capacity. Willis opposed the joinder motion. A hearing was held on September 19, 2016. The court denied the joinder motion and took the matter under submission.

On September 28, 2016, the trial court issued a minute order granting the anti-SLAPP motion. The court found the disinheritance petition arose out of protected litigation activity. The court further found that Willis had failed to show a probability of prevailing because Dana's petition was brought in her capacity as trustee. It was not a direct contest because she brought it on the grounds of mistake and misrepresentation, not duress, fraud, or undue influence. The trial court granted the motion to strike and awarded attorney fees to Dana. Willis filed a timely notice of appeal from the order granting the motion to strike. On November 18, 2016, the trial court awarded attorney fees to Dana of $24,795.00 and costs of $83.50.

# DISCUSSION

## Anti-SLAPP Statute and Standard of Review

"Courts construe the anti-SLAPP statute broadly to protect the constitutional rights of petition and free speech." (*Anderson v. Geist* (2015) 236 Cal.App.4th 79, 84.) "Resolution of an anti-SLAPP motion involves two steps." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) In the first step, the moving party must establish that the claim at issue arises from free speech or petitioning activity protected by section 425.16. (*Ibid.*) Under section 425.16, an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).)

If the moving party establishes that the claim arises from protected activity, the burden shifts to the opposing party to demonstrate a probability of prevailing on the merits. (*Baral, supra,* 1 Cal.5th at p. 384.) The second step has been compared to a "summary-judgment-like procedure." (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714; *Baral, supra,* 1 Cal.5th at p. 384.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.' [Citation.]" (*Baral, supra,* at pp.384–385.)

We review an order granting or denying an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) "'We exercise our independent judgment to determine not only whether the anti-SLAPP statute applies, but whether the complainant has established a reasonable probability of prevailing on the merits. [Citation.]' [Citation.]" (*Greco v. Greco* (2016) 2 Cal.App.5th 810, 820 (*Greco*).)

**No Contest Clauses**

A "no contest clause" is "a provision in an otherwise valid instrument that, if enforced, would penalize a

13

beneficiary for filing a pleading in any court." (Prob. Code, § 21310, subd. (c).)[3]

"A no contest clause 'essentially acts as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument.' [Citation.] 'The purpose of no contest clauses "is to discourage will contests by imposing a penalty of forfeiture against beneficiaries who challenge the will."' [Citation.] 'In essence, a no contest clause conditions a beneficiary's right to take the share provided to that beneficiary under such an instrument upon the beneficiary's agreement to acquiesce to the terms of the instrument. [Citation.]' . . . [Citation.]" (*Betts v. City National Bank* (2007) 156 Cal.App.4th 222, 231, fn. omitted.)

"No contest clauses, whether in wills or trusts, have long been held valid in California. [Citations.] Such clauses promote the public policies of honoring the intent of the donor and discouraging litigation by persons whose expectations are frustrated by the donative scheme of the instrument. [Citation.] [¶] In tension with these public policy interests are the policy interests of avoiding forfeitures and promoting full access of the courts to all

---

[3] "'Pleading' means a petition, complaint, cross-complaint, objection, answer, response, or claim." (Prob. Code, § 21310, subd. (d).)

14

relevant information concerning the validity and effect of a will, trust, or other instrument.  [Citation.]  In light of these opposing interests, the common law in California recognized the enforceability of no contest clauses, albeit strictly construed, 'so long as the condition was not prohibited by some law or opposed to public policy.'  [Citation.]" (*Donkin v. Donkin* (2013) 58 Cal.4th 412, 422 (*Donkin*).)

The California Law Revision Commission, after studying the no contest law, issued a report in 2008 recommending retention of the statute with significant revisions. (Recommendation: Revision of No Contest Clause Statute (Jan. 2008) 37 Cal. Law Revision Com. Rep. (2007) pp. 359, 391–399 (Revision Rep.).)  "According to the Commission, no contest clauses are still supported by a number of important public policy interests, including respecting a transferor's ability to control the use and disposition of his or her own property and to avoid the cost, delay, public exposure, and additional discord between beneficiaries involved in litigation over the transferor's estate plan.  (Revision Rep., *supra*, at pp. 364–366.)" (*Donkin, supra,* 58 Cal.4th at pp. 424–425.)

"The Commission acknowledged, however, that other public policy concerns 'can trump a transferor's intention to create a no contest clause.'  (Revision Rep., *supra,* 37 Cal. Law Revision Com. Rep. at p. 369.)  It noted that as a matter of general public policy, 'a person should have access to the courts to remedy a wrong or protect important rights.'  (*Ibid.*)  The Commission stated that a no contest clause

15

should be applied conservatively to avoid a forfeiture that is not intended by the transferor.  (*Id.,* at pp. 369–370.)  The Commission agreed that judicial proceedings may be necessary to determine a transferor's intentions.  (*Id.,* at pp. 370–372.)  And it emphasized that important public policy interests support judicial supervision of an executor, trustee, or other fiduciary.  (*Id.,* at p. 372.)" (*Donkin, supra,* 58 Cal.4th at p. 425.)

To resolve uncertainty, the Commission recommended simplifying the statute by defining the types of contests narrowly.  (*Donkin, supra,* 58 Cal.4th at p. 425.)  "'A beneficiary should not be punished for bringing an action to ensure the proper interpretation, reformation, or administration of an estate plan.  Such actions serve the public policy of facilitating the fair and efficient administration of estates and help to effectuate the transferor's intentions . . . .  [¶]  The proposed law would merely extend that principle to its logical end . . . .' ([Revision Rep., *supra,* 37 Cal. Law Revision Com. Rep.] at p. 395.)" (*Id.* at p. 426.)  The Legislature repealed and replaced the statutes governing no contest clauses based on the recommendations of the Commission.  (Stats. 2008, ch. 174, §§ 1, 2, p. 567 [repealing former § 21300 et seq., and adding § 21310 et seq.]; Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1264 (2007–2008 Reg. Sess.) as amended June 18, 2008; *Donkin, supra,* at pp. 426–427.)

16

Under the current law, a no contest clause will only be enforced against a pleading that challenges certain property transfers, a creditor's claim, or "a direct contest that is brought without probable cause." (Prob. Code, § 21311, subd. (a)(1).)[4] A "direct contest" is a contest that alleges one or more terms of a protected instrument are invalid based on a ground listed in Probate Code section 21310, including "[m]enace, duress, fraud, or undue influence." (*Id.*, § 21310, subd. (b)(4).) "For the purposes of this section, probable cause exists if, at the time of filing a contest, the facts known

---

[4] Probate Code section 21311 provides in full, "(a) A no contest clause shall only be enforced against the following types of contests:

(1) A direct contest that is brought without probable cause.

(2) A pleading to challenge a transfer of property on the grounds that it was not the transferor's property at the time of the transfer. A no contest clause shall only be enforced under this paragraph if the no contest clause expressly provides for that application.

(3) The filing of a creditor's claim or prosecution of an action based on it. A no contest clause shall only be enforced under this paragraph if the no contest clause expressly provides for that application.

(b) For the purposes of this section, probable cause exists if, at the time of filing a contest, the facts known to the contestant would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery."

to the contestant would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery." (*Id.*, § 21311, subd. (b).)

**Protected Activity**

Willis contends the anti-SLAPP statute should not be applied to a petition to enforce a no contest clause. His argument is not unreasonable, but it ultimately fails, as we cannot disregard the plain language of the anti-SLAPP statute.

A cause of action arises from a protected activity under the anti-SLAPP statute if it arises from "any written or oral statement or writing made before a . . . judicial proceeding." (Code Civ. Proc., § 425.16, subd. (e)(1).) A "contest" is "a pleading filed with the court by a beneficiary that would result in a penalty under a no contest clause, if the no contest clause is enforced." (Prob. Code, § 21310, subd. (a).) Willis's petition alleging a violation of the no contest clause arises from a pleading filed with the probate court and therefore is subject to the anti-SLAPP statute.

Willis contends applying the anti-SLAPP statute in proceedings to enforce no contest clauses encourages litigation and discord between beneficiaries and increases litigation costs, contrary to the policies behind the no contest provisions and the intent of testators. Willis also notes that specific rules unique to the Probate Code should control over

18

general provisions of the Code of Civil Procedure. "The general rules of the Code of Civil Procedure do not apply when the Probate Code provides special rules. In the absence of a special rule, the general rules of practice apply to matters of procedure in the probate court. . . . [¶] Those cases which have held provisions of the Code of Civil Procedure inapplicable in probate proceedings involve provisions of the Code of Civil Procedure which are inconsistent with specific provisions of the Probate Code. (See, e.g., *Estate of Neilson*[(1962)] 57 Cal.2d 733; Code Civ. Proc., § 1033 inconsistent with Prob. Code, § 1232); *Estate of Wallace* (1977) 74 Cal.App.3d 196, 201; Code Civ. Proc., § 1003 inconsistent with Prob. Code, § 1233.)" (*Swaithes v. Superior Court* (1989) 212 Cal.App.3d 1082, 1088–1089.)

We conclude that although the policies underlying the no contest provisions have been carefully balanced by the Legislature and the anti-SLAPP procedures may impede some of those goals, including increasing litigation costs and potential delay, no provision of the Probate Code has been shown to be inconsistent with the anti-SLAPP provisions. The language of the anti-SLAPP statute is clear and unambiguous, and it has been applied to other probate court petitions. (*Greco, supra,* 2 Cal.App.5th at pp. 823–826 [anti-SLAPP statute applied to a claim for constructive fraud, but trustee's use of trust funds to pursue litigation against beneficiaries was not a protected activity].) There may be valid reasons to exempt enforcement of no contest clauses from the anti-SLAPP statute, but if so, it is for the

19

Legislature to create an exception. (See generally *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 136 ["We express no view about whether the statutory language, thus applied, ideally balances the competing concerns or represents the soundest public policy. Such is not our responsibility or our province. We simply conclude, as a matter of statutory construction, that application of the statutes' plain terms to the circumstances of this case does not produce absurd results that are clearly contrary to the Legislature's intent."].) The trial court properly found that Dana's reformation petition was a protected activity under the anti-SLAPP statute.

**Probability of Prevailing on Merits**

Willis contends the anti-SLAPP motion should have been denied because he established a reasonable probability of prevailing on the merits. We agree.

**A. Filing as a Beneficiary**

A contest is a pleading filed with the court by a beneficiary. Willis contends there is ample evidence to meet his burden to establish that Dana filed the reformation petition as a beneficiary of the trust. We agree.

The petition identified Dana as trustee only once in the opening sentence, while every other reference to Dana, and the petition as a whole, was consistent with her interest as a

20

beneficiary.  The attorney caption and the attorney signature block stated that the attorneys represented Dana, without identifying her as trustee.  Dana signed a verification of the reformation petition which did not state that she was filing as trustee.  The petition alleged that under Civil Code section 3399, a written instrument could be reformed based on the application of an aggrieved party.  Dana was aggrieved as a beneficiary, not as a trustee.  The goal of the petition was to disinherit Willis and substantially reduce any potential gift to Phillips Academy, making the distribution of assets far more lucrative for Dana and her son.  The petition was consistent with the interests of Dana as a beneficiary, not with her fiduciary duties as a trustee to the beneficiaries, including Willis and Phillips Academy, whose interests would be impaired or eliminated by the reformation petition.  Viewing the evidence in the light most favorable to Willis, he made a prima facie showing that Dana filed the reformation petition in her capacity as a beneficiary, or in her dual capacity as trustee and beneficiary.

Dana's evidence, although conflicting, did not defeat Willis's claim as a matter of law.  Dana noted that she was not required to file the reformation petition as an aggrieved party under Civil Code section 3399, because she had standing to file it as trustee under Probate Code section 17200.  Dana invoked Civil Code section 3399 in her petition, however, which was evidence that she filed the petition as a beneficiary.  We also note that both trustees and

21

beneficiaries may petition the probate court under Probate Code section 17200, so the statute does not definitively support one interpretation over the other.

## B. Grounds for Direct Contest

Willis contends he made a prima facie showing that the reformation petition constituted a direct contest on the ground of fraud. This is correct. There is sufficient evidence to conclude that one of the grounds for the reformation petition was fraud.

"'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citations.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

The grounds for reformation alleged in the petition included misrepresentation and nondisclosure. On the first page of the petition, Dana alleged that the trust was not drafted in accordance with Allyne's intent and the terms of the trust were misrepresented by the drafter. Dana later alleged her belief that Boykin made a mistake, or "of his own accord, Mr. Boykin had Allyne sign a document that did not reflect her wishes with respect to the distributions upon her death, the removal of her son as a beneficiary and trustee, or the amount the named charity would ultimately get were

22

Dana and [Urick-Stasa] both deceased." The petition alleged that Boykin removed Willis as a trustee but not a beneficiary, slipped it by Allyne, and had her sign the restated trust. Boykin knew some of the provisions might not work, but had Allyne sign the restated trust anyway, knowing Allyne thought the trust was being distributed to Dana and Urick-Stasa. These are allegations of misrepresentations made by Boykin, knowing they were false, with the intent that Allyne would rely on them. The petition also alleges justifiable reliance, in that Allyne believed she was being properly advised and the trust was drafted as she had requested. The resulting damages alleged were that the trust provisions did not reflect the true intent of the trustor. Willis made a prima facie showing that the grounds alleged in the reformation petition included fraud in the form of misrepresentation and nondisclosure.

Dana contends the reformation petition was not a direct contest because she did not seek to invalidate the trust, but merely to reform the trust to reflect the trustor's intent. This is incorrect. A direct contest is a pleading that alleges one or more terms of a protected instrument are invalid based on a ground set forth in Probate Code section 21310. Dana's reformation petition sought to invalidate the terms providing distributions to Willis as a result of Boykin's misrepresentations or concealment. The effect of Dana's proposed action—to invalidate certain distributive provisions of the trust on grounds enumerated in section 21310—controls over the label that she gave to the remedy that she

23

sought.  (See Civ. Code, § 3528 ["The law respects form less than substance"].)

## C. Probable Cause

Willis contends that Dana brought the reformation petition without probable cause.  We conclude Willis made a prima facie showing that Dana did not have probable cause to file the reformation petition.[5]

Allyne's original trust provided after her death for an annual income to her children for life and to her grandchild in trust until age 35.  She explained on videotape that she did not want to leave her estate to her children outright. Boykin explained the trust provisions to her on and off camera.  She wanted to consider the distribution age for her grandson further, which she did, and she executed the trust documents.  Around the holidays in 2014, Allyne disinherited her son by way of a handwritten amendment to her trust.  Boykin prepared two separate amendments to disinherit Willis, but Allyne did not sign them.  Instead, she fully restated her trust more than a year later, superseding her handwritten amendment and reinstating her son as a beneficiary.  The restated trust continued to be structured as

_____

[5] The trial court did not reach the issue of probable cause.  Because we review of the sufficiency of the showing under the second prong of the anti-SLAPP analysis de novo, we independently resolve the issue.

24

a charitable remainder annuity trust.  Thus, the original trust and the restated trust both specify Allyne's intent to provide interests to Dana, Willis, Urick-Stasa, and Phillips Academy.  Both trusts also provided for Urick-Stasa's interest to remain in trust for him until age 35.

Willis has demonstrated a reasonable probability of prevailing on the issue of probable cause.  Although Allyne handwrote an amendment to remove him as a beneficiary, she did not sign later amendments Boykin prepared to disinherit him.  Instead, Allyne chose to restate her trust in full to supersede her handwritten amendment and expressly reinstate Willis as a beneficiary.  Dana had no other evidence to support her claim that her mother intended Dana and Urick-Stasa to be the sole beneficiaries of her trust.  Willis has sufficiently established at this stage of the proceedings that a reasonable person would not believe, based on the facts known to Dana, that there was a reasonable likelihood that the trust would be reformed to provide solely for Dana and her son.

Even if the handwritten amendment could be the basis for a reasonable person to believe that after further discovery the probate court was likely to eliminate Willis's interest, there were no facts in the record that would cause a reasonable person to believe the probate court would reform Phillips Academy's interest as the remainder beneficiary.  Allyne twice signed trust instruments that provided a substantial remainder to Phillips Academy.  There is no evidence that she intended to make an outright gift to Dana

and Urick-Stasa in 10 years, with a much smaller contingent gift to Phillips Academy in the event of both their deaths. Allyne wanted her grandson's share held in trust for him until age 35. Under the proposed reformation, Urick-Stasa's share would be distributed at age 18.

Dana contends that she had probable cause to file the reformation petition because she had reason to believe the relief would be granted after an opportunity for further investigation or discovery. She contends the grounds for reforming the trust will require further inquiry into Allyne's communications to determine whether the trust reflects Allyne's testamentary intent. At this stage, Dana has fallen well short of establishing as a matter of law that she had a reasonable basis to believe the relief she requested would be granted based on the information available to her or after further discovery. Willis presented evidence with the minimal merit necessary to overcome the anti-SLAPP motion.

Because the order granting the motion to strike must be reversed, the order awarding attorney fees must be reversed as well.

## DISPOSITION

The order granting the motion to strike and the order awarding attorney fees are reversed. The probate court is directed to enter a new and different order denying the motion to strike. Appellant Willis E. Urick, III is awarded his costs on appeal.

KRIEGLER, Acting P.J.

We concur:

BAKER, J.

DUNNING, J.*

---

* Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.