Filed 5/23/22  Urick v. Lewitt, Hackman, Shapiro, Marshall & Harlan CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DANA URICK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN, et al.,<br><br>    Defendants and Respondents. | B312238<br><br>(Los Angeles County Super. Ct. No. 20VECV00342) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Affirmed.

M. Renee Orth for Plaintiff and Appellant.

Yee & Associates, Steven R. Yee, and James H. Tarter for Defendants and Respondents.

## INTRODUCTION

Appellant Dana Urick served as the trustee of her late mother's trust.[1]  The trust agreement provided that, for a set period of time, Dana, her brother Willis, and her son Trentyn, would each receive annual interest payments from the trust, after which the remaining principal would be distributed to Phillips Academy Andover (Phillips Academy).  The trust also contained a no contest clause.  Dana subsequently petitioned to reform the trust to eliminate Willis and potentially Phillips Academy as beneficiaries.  This reformation petition was drafted and filed by respondent attorney Kira Masteller of respondent Lewitt, Hackman, Shapiro, Marshall & Harlan (collectively, Lewitt Hackman) in 2016.

Willis contested the reformation petition and claimed Dana had triggered the no contest clause by filing it without probable cause.  Dana retained new counsel in 2016 to defend against Willis's claims.  In October 2017, Division Five of this court reversed the grant of Dana's anti-SLAPP motion, finding Willis had made a prima facie showing (a) that the petition had been filed in Dana's capacity as a beneficiary, thus potentially triggering the no contest clause, and (b) that her petition constituted a direct contest, filed without probable cause.  In January 2020, the probate court

---

[1]  Because several of the individuals discussed herein share a surname, we refer to them by their first names.

suspended Dana as trustee, after finding the filing of the reformation petition breached her fiduciary duty as trustee.

In March 2020, Dana sued Lewitt Hackman, alleging seven acts of malpractice, including the failure to advise her regarding her fiduciary duties as a trustee, or to inform her that filing the reformation petition could violate those duties. Lewitt Hackman demurred, arguing that Dana's claims were barred by the statute of limitations because she sustained actual injury from any malpractice more than a year prior to her lawsuit. Dana countered that she did not sustain actual injury until the probate court suspended her as trustee. The trial court sustained the demurrer and Dana appealed. While the appeal was pending, the probate court found that Dana had brought the petition as a beneficiary and without probable cause, triggering the no contest clause; Dana was disinherited.

On appeal, Dana does not contend the trial court erred in sustaining Lewitt Hackman's demurrer as to six of the seven acts of malpractice alleged in her operative complaint. As to the remaining act -- allegedly misadvising her as to her fiduciary duties as trustee -- Dana contends the court erred in finding she sustained actual injury more than a year before she filed suit. For the first time on appeal, she also argues she did not discover Lewitt Hackman's malpractice until the probate court suspended her as trustee. Finally, she requests that we grant her leave to amend to allege that Lewitt Hackman committed additional malpractice by filing a reformation petition that lacked probable cause.

We conclude the trial court did not err in sustaining the demurrer because Dana both sustained actual injury and knew, or should have known, of Lewitt Hackman's alleged malpractice more than a year before she filed suit. We additionally conclude that the proposed amendment would suffer from the same fatal defect. We therefore affirm.

## STATEMENT OF RELEVANT FACTS

### A. *Background*

#### 1. Allyne Establishes a Trust

In March 2013, Allyne Urick executed the Allyne L. Urick Trust Agreement. As explained by the court in *Urick v. Urick* (2017) 15 Cal.App.5th 1182, "The trust was structured as a charitable remainder annuity trust, which pays a fixed amount of income to the donor's beneficiaries and gives the remainder to a charity. At Allyne's death, after certain payments and distributions from the trust estate, the remaining trust principal would be annuitized and the income distributed in equal shares to Willis, Dana, and Dana's son Trentyn Urick-Stasa. Upon termination of the annuity, the remaining principal would be distributed to Phillips Academy Andover, 'In Memory of Willis E. Urich, Jr., Class of 1934.'" (*Id.* at 1186.) In January 2014, Allyne

wrote a note disinheriting Willis, but did not sign it. (*Ibid.*)[2] In August 2014, Allyne executed the "Amendment and Full Restatement of the Allyne L. Urick Trust Agreement," which, like the 2013 trust agreement, was a charitable remainder annuity trust. It provided that after certain payments and distributions, the principal would be annuitized and the income generated would be distributed in equal shares to Willis, Dana, and Trentyn for a period of time, after which the remaining principal and any undistributed income would be distributed to Phillips Academy, in memory of Willis E. Urick, Jr. (*Id.* at 1187-1189.) The trust agreement contained a no contest clause, providing that should any beneficiaries contest any provision of the trust, they would have their rights under the trust determined as if they had predeceased the execution of the trust without living issue. (*Ibid.*) After Allyne's death, Dana would be the successor trustee of the trust. (*Ibid.*)

### 2. Dana Seeks to Reform the Trust

Allyne died in August 2015. (*Urick v. Urick*, *supra*, 15 Cal.App.5th at 1187.) In February 2016, represented by Lewitt Hackman, Dana filed a reformation petition, asking the probate court to alter the terms of the trust so that after distributing specific bequests and personal property, all the

---

[2] Although Allyne's lawyer sent her amendments to the trust agreement effectuating this disinheritance, Allyne did not sign them.

5

remaining principal would be divided into two shares -- one for Dana and one for Trentyn. (*Id.* at 1187-1188.) After being held in trust for 10 years, the assets would be distributed outright to Dana and Trentyn. (*Id.* at 1188.) If neither survived, the assets would be distributed equally to four institutions, one of which was Phillips Academy. (*Ibid.*)[3] While the petition noted that it was brought by "Dana Urick, Trustee of The Allyne L. Urick Trust," neither the attorney caption, nor the signature block, nor the verification of the petition, stated that Dana was bringing the petition in her role as trustee. (*Ibid.*)

In May 2016, Willis petitioned the probate court to decide whether Dana's filing of the reformation petition triggered the trust's no contest clause as a direct contest to the trust lacking probable cause. (*Urick v. Urick*, *supra*, 15 Cal.App.5th at 1189.) Dana, represented by new counsel, responded by filing an anti-SLAPP motion, arguing the court should dismiss Willis's petition because her reformation petition constituted protected litigation activity, and Willis could not show a probability of prevailing as, among other reasons, she filed the reformation petition in her capacity as trustee. (*Ibid.*) Willis opposed the motion, arguing that Dana had filed the petition as a beneficiary, and the petition

---

[3] "No mention was made of the distribution to Phillips Academy being in memoriam." (*Urick v. Urick*, *supra*, 15 Cal.App.5th at 1188.)

6

lacked probable cause.[4] (*Ibid.*) Without reaching the issue of probable cause, the probate court granted the anti-SLAPP motion, finding Dana had brought the petition as a trustee. (*Urick v. Urick, supra,* at 1190-1191, 1197, fn. 5.)

In October 2017, our colleagues in Division Five reversed, finding that Willis had provided "ample evidence" showing Dana had filed the petition as a beneficiary, and not a trustee.[5] (*Urick v. Urick, supra*, 15 Cal.App.5th at 1195, 1199.) The court additionally found prima facie evidence that the petition, which contained allegations of misrepresentation and nondisclosure by Allyne's attorney,

[4] "A no contest clause shall only be enforced against" certain types of contests, including "(1) A direct contest that is brought without probable cause." (Prob. Code, § 21311, subd. (a).) A "Direct contest" is one which "alleges the invalidity of a protected instrument or one or more of its terms, based on one or more of the following grounds: [¶] . . . [¶] (4) Menace, duress, fraud, or undue influence." (Prob. Code, § 21310, subd. (b).)

[5] The appellate court found that the petition referred to Dana as a trustee only once, "while every other reference to Dana, and the petition as a whole, was consistent with her interest as a beneficiary." (*Urick v. Urick*, *supra*, 15 Cal.App.5th at 1195-1196.) The court also pointed out the attorney caption and signature block did not identify Dana as a trustee, and that the petition referenced a Civil Code section permitting an "aggrieved party" to file a petition for reformation; Dana was aggrieved as a beneficiary, not a trustee. (*Id.* at 1196.) Moreover, the purpose of the reformation petition was to secure a larger share of the estate for Dana and her son, which "was consistent with the interests of Dana as a beneficiary, not with her fiduciary duties as a trustee to the beneficiaries . . . ." (*Ibid.*)

constituted a direct contest to the trust on the grounds of fraud. (*Id*. at 1196.) The court further found Willis had made a prima facie showing that Dana had brought the reformation petition without probable cause, noting that Dana's only evidence that Allyne intended to disinherit Willis was a handwritten note, which Allyne later contradicted by restating her trust in full and expressly reinstating Willis as a beneficiary. (*Id*. at 1197-1198.) Finally, the court observed "there were no facts in the record that would cause a reasonable person to believe the probate court would reform Phillips Academy's interest as the remainder beneficiary." (*Id*. at 1198.) The appellate court concluded that Willis had "sufficiently established at this stage of the proceedings that a reasonable person would not believe, based on the facts known to Dana, that there was a reasonable likelihood that the trust would be reformed to provide solely for Dana and her son." (*Ibid*.)

### 3. Dana Is Suspended as Trustee

In July 2019, Dana withdrew her attempt to reform the petition as an individual. In January 2020, the probate court granted Willis's request to suspend Dana as trustee, finding she was not permitted to pursue reformation of the trust when it did not benefit the other beneficiaries.[6]

---

[6] Though the record does not contain the document, the court's January 2020 order mentions the suspension request was

*(Fn. is continued on the next page.)*

8

**B.** *Dana's Complaint*

In March 2020, Dana filed a complaint against Lewitt Hackman, which she amended in November 2020. The first amended complaint (FAC) contained six causes of action, all based on allegations of malpractice. Dana alleged that in February 2016, Lewitt Hackman committed malpractice by failing to: (1) advise Dana that she could petition the Probate Court for instructions on whether to reform the trust; (2) advise Dana of the risks to her as both trustee and beneficiary of filing a petition for reformation, including the risk of disinheritance; (3) specify that the petition for reformation was brought by Dana in her capacity as a trustee, which led the Court of Appeal to conclude the petition triggered the "no contest" clause; (4) prepare adequate accountings for the trust; (5) advise Dana that Masteller had previously been accused of malpractice; (6) advise Dana that communications between Dana and her attorneys would be disclosed to a successor trustee should Dana be removed as trustee; and (7) advise Dana of her fiduciary duties as a trustee, and that she potentially violated those duties by filing a petition for reformation. Dana further alleged that she had yet to incur attorney's fees to "rectify" her attorneys' wrongdoing, but anticipated

made "pursuant to Willis'[s] petition for removal, filed May 31, 2016 . . . ."

9

doing so.[7] She also alleged that she had been suspended as trustee and faced potential removal, which would cost her "hundreds of thousands of dollars per year in lost Trustee fees," that she would potentially be surcharged for the attorney's fees she paid from trust funds, and that she could be disinherited if the court determined the petition for reformation triggered the trust's no contest clause.

In December 2020, Lewitt Hackman demurred. Among other arguments, they contended the FAC was barred by the one-year statute of limitations because the petition for reformation in question had been subject to an appeal that had been decided against Dana in October 2017. In opposing the demurrer, Dana argued that the statute of limitations did not begin to run until she had sustained actual injury, which was a factual question unsuitable to be decided on demurrer. Dana additionally argued that the appellate opinion did not constitute actual injury, but only an indication that she might sustain future injury. Should the demurrer be sustained, Dana requested leave to amend to allege that she was not actually injured until the probate court removed her as trustee in January 2020. In their reply, Lewitt Hackman reiterated that their actions had caused Dana actual injury because they diminished her rights and remedies.

---

[7] Despite this allegation, Dana does not deny that she incurred attorney's fees to resist Willis's petition, including his claim that Dana's filing of her reformation petition triggered the no contest clause.

10

In January 2021, the trial court sustained the demurrer, noting that "[c]ourts have held that when a victim of malpractice is required to incur attorney fees to either file a lawsuit to undo effects of malpractice or to defend an action resulting from the malpractice, actual injury was suffered." The court found that Dana had sustained actual injury by the time the appellate court opinion issued in October 2017, because she "was having to defend her actions in filing the petition for reformation and was also aware that the action[] was being challenged as something she undertook as a beneficiary rather than a trustee." Therefore, her March 2020 complaint was time-barred. The trial court subsequently entered judgment against Dana, and she timely appealed.

### C. *Dana Is Removed as Trustee, Surcharged, and Disinherited*

In May 2021, after Dana had filed this appeal, the probate court ruled that she had triggered the no-contest clause by filing a reformation petition as an individual beneficiary, without probable cause. The court therefore found Dana disinherited, and entered judgment to this effect. The next day, the probate court removed Dana as trustee and surcharged her for over two million dollars in attorney's fees that she caused the trust to incur.

11

**D.** *Request for Judicial Notice*

In July 2021, Dana requested that we judicially notice two hearing transcripts and two judgments, as well as the court rulings and findings reflected in each of those documents.[8] We reject Dana's request because the documents she asks us to notice are already in the record, and we are capable of interpreting their legal effect.

## DISCUSSION

While Dana alleged seven separate acts of malpractice in her FAC and insists that each act must be analyzed separately, she contends on appeal that the trial court erred in sustaining the demurrer only as to one of the seven acts -- misadvising Dana regarding her fiduciary duties as trustee. Because Dana presents no argument as to why the court erred in sustaining the demurrer as to the other six acts of purported malpractice, she has forfeited any such arguments. (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 ["In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal

---

[8] Specifically, Dana requests we notice: (1) portions of the reporter's transcript of the May 19, 2021 hearing at which the probate court ruled on Willis's petitions for instructions whether Dana violated the no contest clause; (2) the judgment after trial on this petition; (3) portions of the reporter's transcripts of the May 27, 2021 hearing at which the probate court ruled on Willis's request to remove Dana as trustee; and (4) the judgment/order removing Dana and surcharging her.

analysis and citation to the record"].)  Therefore, we consider only whether the trial court erred in sustaining the demurrer as to Lewitt Hackman's alleged misadvising of Dana regarding her fiduciary duties as trustee.

### A.  *The Court Did Not Err in Sustaining the Demurrer*

All parties agree that Dana's claims against Lewitt Hackman are governed by the statute of limitations period set forth in Code of Civil Procedure section 340.6, which provides:  "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . .  [T]he period shall be tolled during the time that any of the following exist:  [¶] (1) The plaintiff has not sustained actual injury."  (Code Civ. Proc., § 340.6, subd. (a).)  In the proceedings below, Dana contended she had not sustained actual injury more than a year before filing her complaint.  On appeal, she repeats this argument, and contends for the first time that she did not discover and could not reasonably have

discovered the malpractice more than a year before filing suit.[9]  We reject both arguments.

### 1.    Dana Suffered Actual Injury More Than a Year Before She Filed Suit

The trial court found Dana suffered actual injury by the time the October 2017 Court of Appeal opinion was issued, because Dana was incurring attorney's fees to "defend her actions in filing the petition for reformation and was also aware that the action[] was being challenged as something she undertook as a beneficiary rather than a trustee."  Dana does not dispute she was required to expend attorney's fees, but contends that "fees incurred in defending an attorney's disputed actions do not constitute actual injury unless and until a court determines the attorney, in fact,

---

[9]    Though Dana did not make the latter argument in opposing the demurrer, she is permitted to do so for the first time on appeal.  (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1244-1245 ["The Supreme Court has repeatedly stated that appellate courts reviewing a general demurrer make a de novo determination of whether the complaint alleges 'facts sufficient to state a cause of action under *any possible legal theory*.' . . . [T]he court did not refer to any possible legal theory *raised in the trial court*.  Indeed, the Supreme Court rejected restrictions of this type when, immediately after mentioning 'any possible legal theory,' it stated: 'We are not limited to plaintiffs' theory of recovery or "'form of action'" pled in testing the sufficiency of the complaint'"].)

erred." Dana cites no authority to support her argument, which is contrary to caselaw.

"Actual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 743 (*Jordache*).) "The loss or diminution of a right or remedy constitutes injury or damage. [Citation.] Neither uncertainty of amount nor difficulty of proof renders that injury speculative or inchoate." (*Id.* at 744.) "There is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury." (*Id.* at 752.)

In *Jordache*, after the plaintiff was sued, its law firm failed to advise it to tender the suit to its insurance companies. (*Jordache, supra,* 18 Cal.4th at 744-745.) After new counsel was retained over three years later, the plaintiff tendered the claims, and then sued the insurance companies after they refused to provide a defense or reimburse the plaintiff for the attorney's fees already incurred. (*Id.* at 745.) After the underlying lawsuit was settled, the plaintiff also settled its lawsuit against the insurance companies. (*Id.* at 746.) The plaintiff then sued its initial law firm for malpractice regarding its failure to investigate or advise the plaintiff about tendering the claim. (*Ibid.*) Affirming a grant of summary judgment in favor of the law firm on statute of limitations grounds, our Supreme Court found

15

that actual injury had occurred when the plaintiff paid defense costs that would have been covered by insurance. (*Id.* at 752.)  At the time those costs were incurred, there had been no court determination that any attorneys had erred. (*Id.* at 745-746; see also *Sirott v. Latts* (1992) 6 Cal.App.4th 923, 929 [plaintiff sustained actual injury when forced to incur attorney's fees due to previous attorney's incorrect advice].)

Citing *Laird v. Blacker* (1992) 2 Cal.4th 606, Dana contends that "[w]here a malpractice claim is based on negligently conducted litigation, as is the case here, the Supreme Court has ruled that the element of damages, 'actual injury' in the context of section 340.6, generally does not exist until an adverse judgment or order of dismissal is entered in that litigation."  Dana ignores the context in which the *Laird* court made this statement.  In *Laird*, the plaintiff had engaged attorneys to file and prosecute a lawsuit.  (*Id.* at 609-610.)  After they filed the complaint but failed to prosecute it, the trial court dismissed the suit.  (*Id.* at 610.)  The plaintiff discharged her attorneys and appealed, in propria persona.  (*Ibid.*)  She eventually settled the case for a nominal amount, then sued her attorneys for malpractice.  (*Ibid.*)  The malpractice lawsuit was filed more than a year after the trial court dismissed her underlying complaint, but less than a year after she settled it.  (*Ibid.*) The issue before our Supreme Court was whether the statute of limitations began to run from the trial court's dismissal, or from the date of settlement.  (*Id.* at 608.)  In this context,

16

the court held that the statute of limitations "commence[d] on entry of adverse judgment or final order of dismissal" because the plaintiff "sustained actual injury when the trial court dismissed her underlying action and she was compelled to incur legal costs and expenditures in pursuing an appeal." (*Id.* at 615.) However, six years later, in *Jordache*, our Supreme Court clarified that "the determination of actual injury does not necessarily require some form of adjudication, judgment, or settlement." (*Jordache*, *supra*, 18 Cal.4th at 755.) Instead, "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." (*Id.* at 743.) We therefore reject Dana's contention that actual injury from an attorney's malpractice cannot occur without a judicial determination of attorney error, and conclude the court did not err in finding Dana's FAC was barred by the statute of limitations.[10]

---

[10] Dana also claims the court failed to analyze separately the statute of limitations as to each allegation of malpractice contained in her FAC. But she does not dispute that more than a year before she sued Lewitt Hackman for malpractice, she incurred attorney's fees related to her claim that they misadvised her regarding her fiduciary duties as trustee, and thus suffered actual injury as a result of the only act of malpractice alleged in the FAC that is at issue in this appeal.

17

### 2. Dana Discovered the Alleged Malpractice More Than a Year Before She Sued

For the first time on appeal, Dana argues that her claim against Lewitt Hackman is not time-barred because it was not until the court suspended her as trustee in January 2020 that she discovered -- or could have discovered -- that Lewitt Hackman had misadvised her about her fiduciary duties. We disagree.

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations period begins once the plaintiff ""has notice or information of circumstances to put a reasonable person on inquiry . . . .""" (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111.)

In October 2017, the appellate court found the reformation petition "was consistent with the interests of Dana as a beneficiary, not with her fiduciary duties as a trustee to the beneficiaries . . . ." (*Urick v. Urick*, *supra*, 15 Cal.App.5th at 1196.) Though the opinion did not establish that Dana had violated her fiduciary duties, it sufficiently put her on notice that her attorneys had potentially committed malpractice by misadvising her regarding her fiduciary duties as trustee, thus triggering her duty to investigate and starting the statute of limitations. (See *Krusesky v. Baugh* (1982) 138 Cal.App.3d 562, 568 [client "is under no duty to investigate her attorney's actions unless

she has actual notice of facts sufficient to arouse the suspicions of a reasonable person"].)  Her March 2020 complaint, therefore, was filed too late.

### B.     *The Court Did Not Err in Refusing Leave to Amend*

For the first time on appeal, Dana requests leave to file an amended complaint alleging that Lewitt Hackman committed malpractice by filing the reformation petition without probable cause, which she claims she did not discover -- and could not have discovered -- until the probate court so determined in May 2021.  We reject her request because such a claim would also be time-barred.  The October 2017 Court of Appeal opinion identified two separate bases for finding Dana's petition lacked probable cause.  First, it noted that Dana's only evidence that Allyne intended the trust to provide solely for Dana and Trentyn (and not Willis and Phillips Academy) was a handwritten amendment removing Willis as a beneficiary, which was later superseded by a signed restatement of the trust that expressly reinstated Willis.  (*Urick v. Urick*, *supra*, 15 Cal.App.5th at 1198.)  With no other evidence to support her claim that her mother intended Dana and Trentyn to be the sole beneficiaries of her trust, the court concluded "a reasonable person would not believe, based on the facts known to Dana, that there was a reasonable likelihood that the trust would be reformed to provide solely for Dana and

her son." Additionally, the court noted that regardless of any evidence of Allyne's intent with respect to Willis, "there were no facts in the record that would cause a reasonable person to believe the probate court would reform Phillps Academy's interest as the remainder beneficiary." Thus, on multiple bases, the court concluded there was prima facie evidence the reformation petition lacked probable cause. (*Ibid.*)

Again, we hold the Court of Appeal's opinion sufficiently placed Dana on notice of a potential malpractice claim against Lewitt Hackman for filing a reformation petition lacking probable cause.[11] Dana does not dispute that by the time the appellate court issued its opinion in October 2017, she had expended attorney's fees defending against the accusation that the petition lacked probable cause. Therefore, any amendment to allege that Lewitt Hackman committed malpractice by filing a reformation petition lacking probable cause would still be barred by the statute of limitations.

Dana counters that even if the appellate opinion did place her on notice, the statute did not commence because "no amount of diligent investigation by [Dana] could have reveal[ed] the *fact* that the Reformation Petition lacked

_____

[11] Therefore, Dana's argument that she could not have known her petition lacked probable cause before the court made this determination is beside the point -- the statute does not require definitive knowledge before it begins to run. (*Jolly v. Eli Lilly & Co.*, *supra*, 44 Cal.3d at 1110-1111.)

20

probable cause and was thus wrongful." We find instructive the case of *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26. There, the plaintiff had hired the defendant law firms to perfect mechanic's liens against projects whose owner was in bankruptcy. (*Id.* at 43.) Four months after a bankruptcy court ruled the liens were invalid, the plaintiff sued for malpractice. (*Id.* at 34.) The Court of Appeal found the claims were time-barred because more than a year before the plaintiff sued, its attorney had informed it that: "(1) its liens may be invalid because a section 546(b) notice was not served; (2) the [bankruptcy] Trustee argued the liens were unperfected; (3) the [bankruptcy] judge doubted the validity of the liens and noted that [plaintiff's] foreclosure actions may be insufficient for perfection and in violation of the Bankruptcy Code; and (4) in light of those comments, [plaintiff] should look into the possibility of legal malpractice and may want to obtain another attorney to review what had been done to date." (*Id.* at 44.) Although the plaintiff could not have known how the bankruptcy court would adjudge the validity of the mechanic's liens until it ruled, the appellate court held the plaintiff possessed sufficient information to trigger the commencement of the statute of limitations. (*Ibid.*) Similarly, although Dana could not have known with certainty how the probate court would rule on Willis's attempts to remove her as trustee, by no later than October 2017, she possessed sufficient information to trigger the commencement of the statute of limitations.

21

**C.** *We May Consider the Court of Appeal's Opinion in* Urick v. Urick

Citing Code of Civil Procedure section 425.16, subdivision (b)(3) (section 425.16(b)(3)), Dana asserts "the Court of Appeal's determination that the No Contest Petition had a probability of prevailing cannot be used by Attorneys to meet their burden of establishing that [Dana] should have discovered that the Reformation Petition lacked probable cause more than one year before she filed this lawsuit." We disagree.

Before October 2005, section 425.16(b)(3) provided: "'If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, and no burden of proof or degree of proof otherwise applicable shall be affected by the determination.'" (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 20, italics omitted.) Our colleagues in Division Three found that "[t]he obvious intent of this subdivision of section 425.16 is that a decision by a court that a plaintiff has presented a prima facie case in response to a defendant's section 425.16 motion to strike should not be used as proof that a verdict in the plaintiff's favor should be rendered in a later dispositive or potentially dispositive portion of the case, such as at trial or a motion by the plaintiff for summary judgment." (*Ibid.*)

In October 2005, section 425.16(b)(3) was amended to provide: "'If the court determines that the plaintiff has

22

established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, *or in any subsequent action,* and no burden of proof or degree of proof otherwise applicable shall be affected by *that* determination *in any later stage of the case or in any subsequent proceeding.*'" (*Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 545, changes italicized.)[12]  However, the Legislature explained that this amendment was implemented to address a previous Supreme Court decision that permitted a defendant who initially survived an anti-SLAPP motion to use that survival as a defense against a subsequent malicious prosecution claim.  (*Id.* at 548-549.)

As *Bergman* and *Hutton* make clear, the purpose of section 425.16(b)(3) is:  (a) to ensure that a court's initial denial of an anti-SLAPP motion due to a prima facie showing by the plaintiff should not be construed as evidence that the plaintiff should prevail; and (b) to prevent the plaintiff from using such a determination to defend against a subsequent malicious prosecution action.  Dana provides no authority preventing us from considering the court's determination not for its merits, but for the effect it had on her, and her claim that she did not discover -- and could not have discovered -- Lewitt Hackman's malpractice until after she was suspended as trustee.

---

[12]    This section was subsequently amended to substitute "the plaintiff" for "he or she."  (Code Civ. Proc., § 425.16, subd. (b)(3).)

23

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

24