Filed 7/25/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MINOO MEIRI, | B310619 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STPB06365) |
| v. | |
| TALE SHAMTOUBI, as Trustee, etc., | |
| Defendant and Respondent. | |


APPEAL from an order of the Superior Court of Los Angeles County, Gus T. May, Judge. Affirmed.

Alpert Law Group, Jeffrey Alpert and Dean Asher for Plaintiff and Appellant.

Weinstock Manion, Jessica G. Babrick, Kathryn E. Kuhn; Greines, Martin, Stein & Richland, Cynthia E. Tobisman and Jeffrey E. Raskin for Defendant and Respondent.

—————————————

This appeal arises out of an intrafamily dispute over the validity of an amended and restated family trust. Several months after the 120-day statutory deadline for trust contests, beneficiary Minoo Meiri sued her mother, Tale Shamtoubi (a beneficiary and trustee), among others, seeking to void the amendment and restatement as procured through undue influence and fraud. Ultimately, Tale Shamtoubi, as trustee, sought instructions as to whether Meiri's litigation violated the trust's no contest clause, arguing that its time-barred nature rendered it a direct contest without probable cause, requiring Meiri's disinheritance. The trial court granted Tale Shamtoubi's petition for instructions, finding that Meiri filed a direct contest without probable cause, and Meiri appeals. We affirm.

## BACKGROUND[1]

### I. The Shamtoubi trust

Tale Shamtoubi and her husband, Iraj Shamtoubi,[2] were married for nearly 60 years before Iraj passed away in 2016. In 1994, Tale and Iraj created the Shamtoubi Trust, serving as joint trustees during their lifetimes, with the trust's property used for their benefit.

---

[1] Preliminarily, we note that Meiri has failed to provide the required statement of facts (Cal. Rules of Court, rule 8.204(a)(2)(C)). The following summary has nonetheless been gleaned from our independent review of the record and the parties' submissions, and it is apparent that there are no contested factual issues.

[2] We refer to Mr. and Mrs. Shamtoubi by their first names for the sake of clarity; we intend no disrespect.

In 2014, Tale and Iraj executed the amended and restated Shamtoubi trust. Upon either of their deaths, the trust was to be divided into three subtrusts, and the surviving spouse was to be the trustee and sole lifetime beneficiary of all three subtrusts.[3]

The trust documents name Tale and Iraj's four children—Meiri, Torag Pourshamtobi, Shahrokh Shamtobi, and Mahrokh Matian—as the remainder beneficiaries of one of the subtrusts, entitled to distributions upon the death of the surviving spouse.

After the original trust documents were drafted, the trust made substantial gifts and/or loans to two of the children (including Meiri) and owed money to a third. The amended and restated trust redistributed the benefits to all four children to account for these events.

The amended and restated trust also included a no contest clause providing that if "any person . . . for any reason or in any manner, directly or indirectly . . . contests in any court the validity of (1) this trust . . . or any provision of the foregoing or any subsequently executed amendment or codicil to the foregoing or any provision of such amendment or codicil (hereinafter referred to as Document or Documents)[ ] seeks to obtain an adjudication in any Direct Contest that a Document is void, otherwise seeks to void, nullify or set aside a Document . . . then the right of such beneficiary to take any interest given to him or her under this trust or any trust created pursuant to this trust shall be determined as it would have been determined had such beneficiary predeceased the trustors without surviving issue."

---

[3] Whether the 1994 trust documents also specified this arrangement is unclear, as that document is not included in the record.

3

The clause defines a "Direct Contest" as "a pleading filed in any court that alleges the invalidity of a Document, or one or more of the terms [o]f a Document, on one or more of the following grounds:  (1) revocation, (2) lack of capacity, (3) fraud, (4) misrepresentation, (5) menace, (6) duress, (7) undue influence, (8) mistake, (9) lack of due execution, and (10) forgery."

On November 20, 2018, Tale provided Meiri and the other beneficiaries with a "Notification by Trustee Pursuant to Probate Code Section 16061.7."  The notice explained, in bold text and in relevant part, that "[y]ou may not bring an action to contest the Trust more than 120 days from the date this notification by the trustee is served upon you."

## II.    Meiri's petitions

On July 10, 2019 (approximately 230 days after the Probate Code[4] section 16061.7 notice), Meiri filed a petition seeking, among other things, to invalidate the amended and restated trust.  This petition, which appended the section 16061.7 notice, claimed that Iraj was suffering from health issues, was heavily medicated, and "was unable to think or act clearly for himself" when executing the amendment and restatement.  Meiri requested that the court determine the validity of and "rescind, nullify and void" the amendment and restatement based on Iraj's "mental capacity" and the document's procurement through the "undue influence" and "fraud" of Meiri's "[c]onspiring" siblings. Meiri thus urged that the court declare the amendment and restatement "void and/or invalid," resulting in the trust being administered under the "terms of the 1994 Trust."  The petition

---

[4] All subsequent undesignated references are to the Probate Code.

4

additionally sought damages in excess of the "jurisdictional minimum" and that the "Conspiring Children and their issue" be disinherited.

At the initial hearing in September 2019, neither Meiri nor her attorney attended, forcing a continuation of the hearing for two months to November. The November appearance was continued to January 2020 at Meiri's request.

Tale's counsel made two written requests in December 2019 that Meiri meet and confer regarding alleged deficiencies in her petition. Tale's counsel explained that Meiri's second cause of action seeking to "rescind, nullify and void" the trust based on lack of capacity, undue influence, and fraud "constitutes a direct contest to the 2014 Restated Trust, ( . . . § 21310[, subd.] (b)), and is untimely pursuant to . . . § 16061.8."[5] Counsel requested that Meiri withdraw that cause of action, warning that pursuing it would violate the trust's no contest clause, and necessitate the filing of a demurrer. Meiri did not respond.

Tale demurred, raising that the second cause of action was untimely, the entire petition was uncertain, and Meiri's other causes of action failed to state a claim. Meiri opposed, arguing that her contest was not untimely. Tale filed a reply. At the January 2020 appearance, Meiri and her counsel again failed to appear, resulting in another continuance.

The trial court sustained the demurrer without leave to amend as to the second cause of action, and granted with leave to amend as to the other causes of action.

---

[5] As general background, section 16061.7 defines the substance of the required notice, while section 16061.8 prohibits contests beyond the notice period.

Meiri filed her first amended petition, which factually supplemented the allegations of "undue influence" and her father's deteriorating "mental health" that were the subject of her original petition. Meiri accepted responsibility for not submitting her contest within the 120 days after it was "served" upon her, as required by the section 16061.7 notice, and was therefore "not contesting the validity" of the amended and restated trust. Still, her amended petition added a request for $20 million in damages for elder abuse, as well as a determination that Tale, Meiri's siblings, and their issue be deemed to have "forfeited any interest under [Iraj]'s estate or as heirs."

Tale sought instructions regarding whether Meiri's actions violated the amended and restated trust's no contest clause, thereby impeding Meiri's rights as a beneficiary. Tale alleged that Meiri's untimely litigation and failures to appear in court had caused the trust to waste its assets and that the second contest merely recycled the allegations of the first rejected petition. In response, Meiri again admitted that she had filed her contest "beyond the statutory period set forth in . . . § 16061.7," but instead contended that an untimely contest was not sufficient to establish the requisite lack of probable cause needed to enforce a no contest clause under section 21311.

On February 17, 2021, the probate court concluded that Meiri had "filed a direct contest without probable cause as defined in . . . section 21311[, subdivision] (b)" and that as a result of her violation of the trust's no contest clause, "any right of [Meiri] to take as a beneficiary under the Shamtoubi Trust or any trust created pursuant to the Shamtoubi Trust shall be determined as if [Meiri] predeceased the Trustors without surviving issue."

6

Meiri timely appealed.

## DISCUSSION

Meiri's argument on appeal is narrow. She acknowledges that her petition was filed well after the 120-day limitations period applicable to trust contests elapsed, but nonetheless contends that the lower court erred in disinheriting her under the trust's no contest clause on the sole basis that her late filing was, under the provision governing such clauses (§ 21311), a direct contest initiated without probable cause. Per Meiri, an untimely contest is not a direct contest. Meiri also asserts that untimeliness does not establish a lack of probable cause. Meiri contends that a court is obligated to consider the contest's substantive allegations, and hold an evidentiary hearing, before disinheriting a beneficiary due to that contest's purported lack of probable cause. According to Meiri, enforcement of a no contest clause solely because a contest falls outside the limitations period cannot be squared with the common law and public policy against forfeiture. We disagree.

## I.    Applicable law and standard of review

"An in terrorem or no contest clause in a trust instrument 'essentially acts as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument.' [Citation.] No contest clauses, whether in wills or trusts, have long been held valid in California." (*Donkin v. Donkin* (2013) 58 Cal.4th 412, 422.)

The court's interpretation of a no contest clause and application of the clause to a proposed action is necessarily informed by competing policy interests. On the one hand, "[s]uch

7

clauses promote the public policies of honoring the intent of the donor and discouraging litigation by persons whose expectations are frustrated by the donative scheme of the instrument." (*Donkin v. Donkin, supra*, 58 Cal.4th at p. 422.) On the other hand, these interests are "[i]n tension with . . . the policy interests of avoiding forfeitures and promoting full access of the courts to all relevant information concerning the validity and effect of a will, trust, or other instrument." (*Ibid.*) "In light of these opposing interests, the common law [and statutory law] in California recognized the enforceability of no contest clauses, albeit strictly construed, 'so long as the condition was not prohibited by some law or opposed to public policy.'" (*Ibid.*; see *id.* at pp. 422–426 [tracing development of California law regarding no contest clauses to present statutory scheme].)

Consistent with these principles, determining " '[w]hether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used.' [Citations.] '[T]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purposes that the [testator] sought to attain by the provisions of [his] will.' [Citation.] Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.'" (*Burch v. George* (1994) 7 Cal.4th 246, 254–255.)

The instant appeal challenges the trial court's determination, pursuant to sections 16061.8 and 21311, that Meiri's petitions—concededly filed after the relevant statutory

8

deadlines—triggered the trust's no contest clause, causing her rights as a beneficiary to be determined as if she had predeceased the trustors without surviving issue.

"Under current law, a no contest clause is enforceable against a 'direct contest that is brought without probable cause.' (§ 21311, subd. (a)(1).)" (*Key v. Tyler* (2019) 34 Cal.App.5th 505, 517.)[6] A " 'contest' " is a "pleading filed with the court by a beneficiary that would result in a penalty under a no contest clause, if the no contest clause is enforced." (§ 21310, subd. (a).) A " '[d]irect contest' . . . alleges the invalidity of a protected instrument or one or more of its terms, based on one or more of" certain enumerated grounds, including "[l]ack of capacity" and "[m]enace, duress, fraud, or undue influence." (§ 21310, subds. (b)(3)–(4).) Additionally, "[f]or the purposes of this section, probable cause exists" where "at the time of filing a contest, the facts known to the contestant would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery." (§ 21311, subd. (b).)

In the absence of disputed facts, we review a court's application of a no contest clause de novo. (*Bradley v. Gilbert* (2009) 172 Cal.App.4th 1058, 1068.) De novo review is equally applicable to the legal question of whether a statute of limitations applies. (*Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1340; *Straley v. Gamble* (2013)

---

[6] The relevant subtrust became irrevocable in 2016 when Iraj passed away. Thus, the parties agree that the present statutory scheme, effective in 2010, applies here. (§ 21315.)

9

217 Cal.App.4th 533, 536 [applying de novo review to interpretation of § 16061.8].)

## II.    The probate court properly applied the trust's no contest clause to Meiri

Meiri's litigation falls within the confines of the trust's no contest clause and section 21311's authorization of the enforcement of a no contest clause where a litigant brings a direct contest without probable cause.  Her contrary legal and policy arguments do not persuade us otherwise.

### A.    *The untimely filing was a direct contest*

Meiri sought "an order . . . declaring that the Purported Amendment is void and/or invalid" due to Iraj's lack of "mental capacity" and her siblings' "undue influence" and "fraud."  This is a plainly enumerated example of a "[d]irect [c]ontest" in both the Probate Code and the amended trust.  At a glance, this is precisely the strain of " 'clear and unequivocal attack' " that warrants overriding the " 'policy against forfeiture' " and applying " 'the penalty contained in the *in terrorem* clause.' "  (*Estate of Black* (1984) 160 Cal.App.3d 582, 587.)

Meiri does not quarrel with the no contest clause's clear textual applicability to the pleadings at bar.  Nonetheless, she invokes *Estate of Lewy* (1974) 39 Cal.App.3d 729, 734 and *Estate of Crisler* (1950) 97 Cal.App.2d 198, 200 to argue that an untimely filing is not a direct contest under section 21311.  In fact, neither case centered upon an untimely contest.  For example, *Lewy*, at pages 733 to 734 concerned challenges to an executrix's capacity and an assertion that a probated document was altered.  Because those allegations did not seek to invalidate

10

the will, they were not "contests" under the no contest provisions applicable in that case.[7]

Meiri points to a statement in *Estate of Lewy*, *supra*, 39 Cal.App.3d at page 734 that a " 'proceeding improperly brought under the chapter [of the Probate Code dealing with will contests] . . . will not result in forfeiture.' "  But that language was only intended to support *Lewy*'s broader point that the substance, rather than the title, of a pleading controls whether it is a "contest." (*Ibid.*)  Therefore, *Lewy* in no way stands for the proposition that any pleading that is time-barred, or otherwise violates the Probate Code, cannot constitute a "contest."

Meiri's use of *Estate of Crisler*, *supra*, 97 Cal.App.2d at page 200 is similarly infirm.  *Crisler* pertained to a beneficiary's motion to dismiss probate proceedings arguing that California lacked jurisdiction to probate a will.  Although the court mentioned that, at the time of the motion, "the time within which a contest could be filed had expired" (*Crisler*, at p. 200), it did not hold that an untimely contest is never a "contest."  Rather, it found that the jurisdictional motion was not a "contest" to the will itself. (*Id.* at pp. 201.)  Thus, timing was minimally relevant to *Crisler*'s holding.  After that passing remark, the court invoked several analogous cases to the beneficiary's jurisdictional challenge to reason that she did not seek "the thwarting of the

---

[7] The 2010 amendments to the Probate Code's no contest provisions eliminated the distinction, previously adopted in 2002, between direct and indirect contests.  (*Donkin v. Donkin, supra*, 58 Cal.4th at pp. 423–424.)  These cases, which preceded those two amendments by decades, refer generally to "contests," but our reference to them is solely for the purpose of construing the present statutory scheme.

11

testator's expressed wishes" (thereby constituting a contest), simply because she sought to contest the will in Oregon. (*Id.* at pp. 200–201.) In this respect, Meiri's petition stands apart. Her pleadings never sought transfer to another state, but instead to undo both the distributions set forth in the 2014 amended and restated trust, and then later, through her amended petition, those in the 1994 trust as well, the precise type of conduct that *Crisler* delineated as a "contest." For these reasons, the litigation that Meiri pursued was a "direct contest" irrespective of its tardy filing.

These precedents notably predate the 2010 revisions to the Probate Code, which were prompted by a 2008 report of the California Law Revision Commission that studied the no contest law and recommended certain revisions. (See *Urick v. Urick* (2017) 15 Cal.App.5th 1182, 1192–1193 (*Urick*).) Before settling on its proposal of "simplifying the statute by defining the types of contests narrowly" (*id.* at p. 1193), the commission carefully weighed numerous policy considerations, from preventing forfeitures and encouraging access to courts on the one hand, to respecting a transferor's right to prompt disposition of property, avoiding litigation and resulting harms to the donor's intent, preserving family privacy, and avoiding forced settlements, nuisance suits, and ownership disputes on the other. (Recommendation: Revision of No Contest Clause Statute (Jan. 2008) 37 Cal. Law Revision Com. Rep. (2007) pp. 365–369, 372, 377.) The Legislature then struck a balance between these competing policy interests by adopting the commission's proposals and limiting the application of no contest clauses to three enumerated circumstances, one of which is a "direct contest

that is brought without probable cause." (§ 21311, subd. (a)(1); see *Urick*, at p. 1193.)

Under Meiri's reading, however, any litigant could easily circumvent these policy judgments, and avoid application of a no contest clause, by filing a grievance, even if that grievance entirely lacked probable cause, after the 120-day window, because that late grievance could never be a direct contest in the first instance. This expansive argument effectively asks us to nullify the legislative scheme relating to no contest clauses, with wide effects on the administration of trusts within the State.[8]

We do not so interpret the Probate Code, and Meiri's pre-2010 cases do not support such a reading.

## B. *The untimeliness of the filing establishes a lack of probable cause*

Additionally, the petition's untimely filing establishes a lack of probable cause, notwithstanding Meiri's counterarguments. The parties focus on section 21311's limitation of the probable cause inquiry to showings "that the requested *relief* will be granted after an opportunity for further investigation or discovery." (§ 21311, subd. (b), italics added.) Meiri suggests that any court assessing probable cause must look to the "substance in the matter" rather than procedural impediments to the relief. She notes that, in proposing

---

[8] Meiri does not allege equitable tolling or otherwise invoke the body of cases excusing the 120-day requirement in instances where a beneficiary is prejudiced by a defective notice. (See, e.g., *Germino v. Hillyer* (2003) 107 Cal.App.4th 951, 956 [surveying cases].) In fact, Meiri expressly abandoned her initial challenges to the notice's adequacy below, and has not sought to excuse her late filing.

amendments to the statute, the commission emphasized that the "granting of relief . . . requires not only the proof of factual contentions but also a legally sufficient ground for the requested relief." (Recommendation: Revision of No Contest Clause Statute (Jan. 2008) 37 Cal. Law Revision Com. Rep. (2007) p. 403.)

This commentary, in fact, disproves Meiri's point; the commission expressly distinguished the allegations' substance from the ultimate legal outcome. And it did so deliberately, distinguishing the former statute as "referr[ing] only to the contestant's factual contentions" and concluding that standard did not go far enough. (Recommendation: Revision of No Contest Clause Statute (Jan. 2008) 37 Cal. Law Revision Com. Rep. (2007) p. 403.) Thus, any legally sufficient bar to relief—whether procedural (e.g., a statute of limitations defect) or substantive— appears to satisfy section 21311, subdivision (b)'s test. (Cf. *Gerhard v. Stephens* (1968) 68 Cal.2d 864, 904 [" '[m]ere lapse of time, other than that prescribed by [statutes of limitations], does not bar relief' "].) Any contrary holding would unravel the Legislature's reasoned amendment.

Meiri's analogy to the probable cause standard applicable to malicious prosecution actions is unconvincing. A malicious prosecution action is grounded in tort and involves its own unique policy considerations. (See, e.g., *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089 [discussing tort's "disfavored" nature].) Malicious prosecution has historically involved personal injury to another. (*Ray Wong v. Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18; accord *Thompson v. Clark* (2022) ___ U.S. ___ [142 S.Ct. 1332, 1338].) For this reason, a separate two-year statute of limitations applies. (*Vafi v. McCloskey* (2011)

14

193 Cal.App.4th 874, 879 [discussing Code Civ. Proc., § 335.1].)
Enforcement of a no contest clause is far afield from tort: such a
clause is a rule set forth in a particular instrument governing the
distribution of bequests, and violating the rule serves to void the
relevant bequests (vindicating the trustor's wishes), rather than
cause personal injury or damage to reputation (vindicating the
interests of a particular plaintiff). (*Estate of Black*, *supra*,
160 Cal.App.3d at p. 587.)

The commission's report on the 2010 amendments
augments these contrasts, expressly repudiating the equivalency
of the two legal standards set forth in the decisions, such as
*Estate of Gonzalez* (2002) 102 Cal.App.4th 1296, 1304, that Meiri
advances. After discussing how the prior standard had been
"equated with the standard that governs malicious prosecution
cases, requiring only that the contest be 'legally tenable,' " the
commission concluded "that such a standard is *too forgiving*. A
no contest clause should deter more than just a frivolous contest.
General law already provides sanctions for frivolous actions."
(Recommendation: Revision of No Contest Clause Statute (Jan.
2008) 37 Cal. Law Revision Com. Rep. (2007) p. 398, italics
added.) By adopting the commission's proposed "probable cause"
standard and uniquely defining it "for the purposes of"
section 21311, subdivision (b), the Legislature explicitly rejected
the comparison to the malicious prosecution standard, having
meticulously weighed the competing policy interests discussed
above, and determining a greater deterrent effect was necessary.
(See *Urick*, *supra*, 15 Cal.App.5th at pp. 1192–1193; see also
*Security Trust & Savings Bank v. Superior Court* (1937)
21 Cal.App.2d 551, 554 [statute of limitations under earlier

15

Probate Code section served unique purpose of settling "property rights within a reasonable time"].)[9]

Meiri further suggests that, because the language of section 21311, subdivision (b) limits the probable cause definition to "the purposes of this section," it does not encompass forfeiture based upon an untimely filing under section 16061.8. Thus, Meiri suggests a forfeiture could not occur unless the Legislature specifically incorporated section 16061.8 into section 21311, subdivision (b).

But, as Tale asserts, this language only plausibly means that probable cause has a unique meaning in the section 21311 context (defined specifically as "reasonable likelihood that the requested relief will be granted" (§ 21311, subd. (b)), thereby departing from the meaning of probable cause in other contexts,

---

[9] This suffices to address Meiri's further argument that "[s]trong policy reasons run against maintenance of a cause of action for malicious prosecution based on an action dismissed for limitations reasons." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 752.) Meiri cites this language in *Lackner* to argue that a statute of limitations cannot be used as a sword to defeat a determination of probable cause. However, that statement in *Lackner* was made in the context of its discussion of the favorable termination element of malicious prosecution, not probable cause. True, our colleagues in Division Two have acknowledged in at least one recent decision that malicious prosecution's lack of probable cause element is "similar" to that in section 21311, subdivision (b), but that was in the context of discussing how to allocate the burden of proof on lack of probable cause. (*Key v. Tyler*, *supra*, 34 Cal.App.5th at p. 529.) Neither *Key* nor *Lackner* position us to rewrite the definition of probable cause expressly provided in the clarified statute.

16

such as malicious prosecution cases. Meiri's interpretation—essentially that every intendment of probable cause must be specifically enumerated in the statute—would not only hamper the Legislature's ability to enact general standards, but run precisely contrary to one of its stated goals of "simplif[ying]" the no contest statute through the 2010 amendments. (Recommendation: Revision of No Contest Clause Statute (Jan. 2008) 37 Cal. Law Revision Com. Rep. (2007) p. 392.)

Indeed, as Meiri points out, the Legislature recognized these efforts could not possibly amount to a "complete codification of the law governing enforcement of a no contest clause." (§ 21313.) But this only further supports the conclusion that the Legislature intended not only a general standard, but one that is functional in thwarting protracted contests—not unlike the litigation that preceded this appeal—that risk, among other things, upsetting a "testator's expressed wishes," a core policy of this body of law. (*Estate of Crisler*, *supra*, 97 Cal.App.2d at p. 200.) Thus, where the Probate Code "does not apply," the Legislature invited review of the common law. (§ 21313.) Here, however, in our view, both the definition of probable cause and the statute of limitations reflected in the Probate Code do apply and none of Meiri's authorities provide adequate reason to depart from those proscriptions.

In sum, Meiri's untimely litigation was a direct contest without probable cause. The lower court, therefore, properly applied the trust's no contest clause to her. This holding necessarily moots Meiri's remaining argument regarding the necessity of an evidentiary hearing, as she acknowledges.

17

## DISPOSITION

The order is affirmed.  Tale Shamtoubi as trustee of the Shamtoubi Trust is awarded her costs on appeal.

CERTIFIED FOR PUBLICATION.


KIM, J.*

We concur:


LAVIN, Acting P. J.


EGERTON, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18