Filed 6/26/24  In re Levine Trust CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| IN RE THE MATTER OF THE WILLIAM DAVID LEVINE TRUST DATED DECEMBER 14, 1993, AS AMENDED | |
| VICTOIRE HOVLAND, <br><br> Defendant and Appellant, <br><br> v. <br><br> GREGORY LEVINE et al., as Co-Trustees, <br><br> Plaintiffs and Respondents. | B323405 c/w B327909 <br><br> (Los Angeles County Super. Ct. No. 22STPB01905) |

APPEALS from orders of the Superior Court of Los Angeles County, Mark S. Priver and Jonathan L. Rosenbloom, Judges. Affirmed in part and reversed in part.

Honey & Copp and Jennifer M. Honey; Shindler Eyrich and John F. Eyrich for Defendant and Appellant.

Weinstock Manion, Jessica G. Babrick and Andrew G. Smith for Plaintiffs and Respondents.

———————————————

This appeal arises in probate proceedings regarding the trust of decedent, William David Levine.  Pursuant to a premarital agreement with his wife, Victoire Hovland (Wife), all of Decedent's property was to be treated as separate property.  In Decedent's trust, he planned for Wife (now 82 years old) to receive a life estate in their home, with the remainder interest – as well as the vast bulk of his other assets – to go to his adult children from a prior marriage, Kimberly Ashley and Gregory Levine (Children).  Children were appointed co-trustees of his estate.  The premarital agreement required Decedent to ensure that Wife could remain in the house without paying house-related expenses, such as property taxes, insurance and maintenance.  The means by which Decedent provided for payment of these expenses required some level of cooperation between Wife and Children following his death.  That cooperation was not forthcoming, with each side accusing the other of attempting to claim more than their share of the estate.  While Decedent's estate was large enough to satisfy the needs of all parties, settlement – although initially attempted – proved elusive, and the matter ultimately descended into litigation.

This appeal concerns but one small part of the ongoing war.  At one point, in response to ongoing hostilities, Wife filed two Creditor's Claims against Decedent's estate, seeking amounts concededly in excess of what she was due at the time.  Children,

2

as trustees, rejected the claims, and Wife did not further pursue them, choosing instead to seek relief through different types of Probate petitions.  Decedent's trust contained a no contest clause, which could be triggered by filing a Creditor's Claim without probable cause – although, as we shall discuss, Wife was exempted from this clause to some, highly disputed, degree.  Children filed a petition seeking to have Wife disinherited from Decedent's trust, making no mention of the exemption.  Wife responded with an anti-SLAPP motion,[1] arguing the disinheritance petition arose out of her petitioning activity (the Creditor's Claims) and Children could not establish minimal merit due to her exemption.  The trial court denied the motion, concluding the exemption clause did not bar Children's disinheritance petition in its entirety.  The court then awarded Children attorney's fees, on the basis that Wife's pursuit of the anti-SLAPP motion was frivolous.  Wife appeals both orders.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Relevant Documents*[2]

Our discussion of the relevant documents includes three documents:  the Premarital Agreement; an irrevocable life

---

[1]     Code of Civil Procedure, section 425.16.  SLAPP refers to Strategic Lawsuit Against Public Participation.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1.)

[2]     It is not our task, on the present appeal, to interpret the terms of the governing documents.  Our discussion of their provisions, unless otherwise indicated, is merely intended to set forth the background for the current dispute, and should not be interpreted as any binding opinion on their meaning.

insurance trust, which the parties call, the "ILIT"; and the Decedent's Trust.

A. *The Premarital Agreement*

On December 8, 2000, just prior to their marriage, Decedent and Wife, with the advice of independent counsel, entered into the Premarital Agreement. Both spouses had two children from prior marriages. Under the agreement, each spouse was to keep their property as separate property, including property acquired during marriage, although husband's salary was to go into an account to pay joint living expenses.

As to the home, Decedent owned it going into the marriage. He agreed to execute documents that would provide Wife with a life estate in the house upon his death, subject to the following terms and conditions: "During [Wife's] life estate, she shall have no obligation to pay for any expense relating to [the house] including, but not limited to, debt service, taxes, maintenance and insurance." The terms and conditions regarding Wife's life estate also stated that Decedent "is able to obtain a policy insuring his life in the amount of $2,000,000 at premium rates acceptable to him in his sole judgment," but did not otherwise indicate what was to be done with the life insurance policy.

B. *The ILIT*

A few months after executing the Premarital Agreement, Decedent executed the irrevocable ILIT, identifying Children as the trustees. The ILIT stated that its primary purpose was "to provide the means and methods by which [Decedent] may satisfy the obligations incurred by him pursuant to the terms of the

4

Premarital Agreement."[3]  The schedule of property initially included in the ILIT is not part of the record on appeal.  However, it appears that the ILIT initially held a $2,000,000 life insurance policy, and later, an additional $6,000,000 life insurance policy.

The ILIT provided that, upon decedent's death, the trustees were to collect all insurance proceeds.  For as long as Wife retained her life estate in the house, the trustees of the ILIT were to pay to the trustees of Decedent's Trust (as it happens, Children were trustees of both) "so much of the income and principal of the [ILIT] Trust Estate as is necessary to pay for any sums due on account of any note(s) secured by any deed(s) of trust encumbering the [r]esidence as well as any sums due on account of real property taxes, maintenance and insurance directly related to the [r]esidence."  Following Wife's death (or any other termination of her life estate), the balance of the ILIT was to be paid to Children and/or their issue.

The ILIT contained a no contest provision.  The no contest provision of the ILIT is not at issue in this case; Children's disinheritance petition concededly sought to disinherit Wife from Decedent's Trust only, not the ILIT.  Nonetheless, we mention the no contest provision from the ILIT because it specifically contemplated disinheriting Wife, by name – the clause stated it applied to "[Wife] or any beneficiary."[4]

---

[3]     This was not the sole purpose of the ILIT; it was also to provide income and security for Decedent's children and grandchildren.

[4]     Specifically, it provided, "If [Wife] or any beneficiary under this Trust Agreement in any manner, directly or indirectly, contests or attacks this Trust Agreement, any of its provisions, any provision of Trustor's Will, or any provision of another trust

5

C.    *Decedent's Trust*

We are concerned with an amended and restated version of Decedent's Trust, purportedly executed a little over a year prior to the Premarital Agreement.

Decedent's Trust references the Premarital Agreement, and in the Trust, Decedent, "ratifies and confirms the terms of the Premarital Agreement and, notwithstanding any provision of this instrument to the contrary, directs the Trustee to carry out the terms of the Premarital Agreement, to the extent such terms are binding on this Trust."

To that end, Decedent's Trust provided that, upon his death, his trustees (who were, again, Children) should set aside, in a separate "Marital Trust" the Trust's interest in the house, to be administered as provided in Article VII of the Trust. We will return to Article VII in a moment; we must mention a few other provisions first. Wife was to receive, outright, all "furniture, furnishings, and equipment and other tangible items of domestic or household use" contained in the house; this is the "Household Items" provision. Everything else in the estate – outside of the Marital Trust and the Household Items gift, was to go either to Children or into a Family Trust, which would itself be broken into subtrusts for decedent's Children and other issue (we refer to these subtrusts collectively as "Family Trusts").

---

agreement established by Trustor, then [Wife] or such beneficiary shall thereby absolutely forfeit any and all beneficial interests which [Wife] or such beneficiary might otherwise have under this Trust Agreement and the interest of [Wife] or such beneficiary shall thereafter be distributed as if [Wife] or such beneficiary were deceased."

6

We return to the provisions of Article VII, the administration of the Marital Trust. Wife was granted an exclusive right to reside in the house rent-free. In addition, the article confirmed that mortgage, property taxes, maintenance and insurance on the house were to be paid from the ILIT. It continued that (i) all other house-related expenses, as determined by the trustees in their discretion; (ii) legal, accounting, and administrative expenses attributable to the Marital Trust; and (iii) all ILIT expenses to the extent ILIT is exhausted shall all be paid from the Family Trusts. Wife would pay these expenses only to the extent the Family Trusts are exhausted. The Marital Trust has three co-trustees: Wife and Children.

Decedent's Trust contained a no contest clause in Article XXIII. It provided as follows: "If any beneficiary (a 'Contesting Beneficiary') under a Protected Instrument [including Decedent's Trust and subtrusts, and the Premarital Agreement], individually or in combination with any other person, directly or indirectly, initiates or participates in any of the following without Probable Cause: [¶] (a) the filing of a Direct Contest; [¶] (b) the filing of a Pleading in any court to challenge a transfer of property on the grounds that it was not the transferor's property at the time of the transfer; and [¶] (c) the filing of a Creditor's Claim or the prosecution of any action based upon a Creditor's Claim . . . in the Trustor's probate estate, against the Trustee of this Trust or any trust created under this Trust, or against a beneficiary of any such trust, [¶] then any share or interest in the trust estate, any bequest or devise and any trust created under this Trust, provided to or established for the benefit of the Contesting Beneficiary, is revoked." The no contest provision defines "probable cause" as existing "if, at the time of filing a

7

Contest, the facts known to the Contesting Beneficiary would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery."

The no contest clause contains the following exemption: "[T]his Article shall not be applicable to [Wife] with respect to the [Marital Trust]."

## 2. *Decedent's Death and the Dispute*

Decedent died December 17, 2020. He left a substantial estate.[5] Wife and Children clashed over the distribution of the estate. According to Children, Wife was seeking reimbursement for personal expenses unrelated to the maintenance of the residence. According to Wife, Children were threatening to file a petition to transfer the proceeds from the $6,000,000 insurance policy from the ILIT into the Decedent's Trust.[6]

---

[5] The record does not specifically indicate the size of the estate. However, in October 2019, decedent applied for the $6,000,000 life insurance policy which was added to the ILIT. In that application, he identified a net worth in excess of $47,000,000, of which nearly $21,000,000 was real estate, with no mortgages.

[6] Although it is not entirely clear in the record, it appears that Wife may have been of the belief that she was entitled to the income from the ILIT during her lifetime, with only the remaining principal going to Children after her death. Children believed Wife was only entitled to such payments from the ILIT as were necessary to cover the mortgage, taxes, insurance, and maintenance on the residence.

At one point, it seemed that a settlement was near, as the parties worked toward an agreement which would guarantee sufficient funds to pay all house-related expenses while allowing Children to access any excess income generated by the ILIT. But it was not to be.[7]

### 3.     *The Creditor's Claims*

On November 2, 2021, Wife filed two Creditor's Claims, on Judicial Council-approved forms, entitled "Creditor's Claim." A Creditor's Claim is "a demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated: [¶] (1) Liability of the decedent, whether arising in contract, tort, or otherwise. . . ." Pursuant to Probate Code, section 9151, subdivision (a), a creditor's claim "shall be supported by the affidavit of the creditor or the person acting on behalf of the creditor stating: [¶] (1) The claim is a just claim. [¶] (2) If the claim is due, the facts supporting the claim, the amount of the claim, and that all payments on and offsets to the claim have been credited. [¶] (3) If the claim is not due or contingent, or the amount is not yet ascertainable, the facts supporting the claim.

---

[7]     We cannot say exactly what precipitated the breakdown in settlement communications and ultimate filing of the Creditor's Claims. In Wife's declaration in support of her anti-SLAPP motion, Wife recounts that, on December 20, 2021, decedent's son "broke into [her] home" and was waiting in the garage to speak with her when she returned from walking her dog – conduct which frightened her and led her to obtain a restraining order against him. She went on to state that she filed her Creditor's Claims in January 2022. But the Creditor's Claims are file-stamped November 2, 2021, several weeks before the purported break-in.

[¶] (4) If the affidavit is made by a person other than the creditor, the reason it is not made by the creditor."

In her first Creditor's Claim, Wife sought $1,000,000. She indicated the claim arose on December 8, 2020, just prior to decedent's death. In the space for her to include the facts supporting her claim, she described the Premarital Agreement and her right to live in the house free from expenses. She conceded that, since decedent's death, she had, in fact, been living in the home, and all tax and insurance payments had been made. She stated, however, that she "has been denied various routine expenses and has become embroiled in multiple disputes concerning the assets from which these expenses were to be satisfied, the administration of the trusts for her benefit and hostilities from her stepchildren whom are now successor trustees of the trusts providing for Claimant for her surviving lifetime. Claimant bears mounting legal fees and may be required to compel her fiduciaries to enforce and honor the contractual rights provided for her. Decedent's children have also objected to and intimidated Claimant as she maintains the home. Petitioner is an octogenarian living in an oceanfront home estimated at Twenty Million Dollars ($20,000,000) which is uniquely costly to maintain. To date, ongoing expense requests have been either denied, delayed or required intervention of counsel."[8]

---

[8] The Creditor's Claim refers to exhibits A-D, "attached hereto," which are not part of our record or otherwise identified. The second Creditor's Claim, simultaneously filed, also refers to exhibits A-D, and identifies them as the Premarital Agreement, Decedent's Trust, the ILIT, and Decedent's will. There is no indication that exhibits A-D attached to the first claim were

10

In her second Creditor's Claim, Wife sought $2,000,000. She indicated the claim arose on February 2, 2021, after decedent's death. She explained that this was the date she received notification that Decedent's Trust became irrevocable. Her explanation of the facts supporting her claim was that she "has determined that Section 7.2.3 of the Trust sets forth circumstances under which Claimant would be personally responsible for residence expenses.[9] Pursuant to the Premarital Agreement, Claimant is not required to pay any expense relating to the residence for her remaining lifetime. The clause violates Claimant's vested contractual rights and must be stricken." In addition, Wife represented that Decedent's Trust "is subject to early termination by its beneficiaries leaving Claimant vulnerable to inadequate or nonexistent trust res available to satisfy residence expenses during her remaining years. The trust requires reformation, security or guarantees to confirm ample assets from which to satisfy Decedent's contractual and testamentary intentions for his surviving spouse."

Children, as Trustees, denied the Creditor's Claims. Pursuant to Probate Code section 9353, subdivision (a), when a Creditor's Claim is rejected, it is "barred" unless the creditor

anything different. That is, there is no suggestion that the exhibits contained anything documenting that $1,000,000 worth of maintenance expenses – or, indeed, any amount of maintenance expenses – had been unpaid.

[9] Section 7.2.3 is the provision indicating that Wife is responsible for the expenses if the ILIT and the Family Trusts are all exhausted.

11

commences an action on the claim within 90 days of the rejection. Wife commenced no action on the claims following their rejection. Instead, she filed petitions to remove Children as trustees for breach of fiduciary duty.[10]

### 4. *The Disinheritance Petition*

On May 16, 2022, Children, as trustees, filed a petition for instructions to enforce the no contest clause of Decedent's Trust against Wife, seeking to disinherit her from Decedent's Trust for filing the two Creditor's Claims without probable cause.

The petition did not mention the language of the no contest clause exempting "[Wife] with respect to the [Marital Trust]," and, as such, made no attempt to interpret it. Instead, the petition alleged that Decedent's Trust provided four benefits to Wife: (1) the Household Items; (2) the exclusive right to live in the house rent free; (3) payment of identified house-related expenses from the ILIT; and (4) payment of non-ILIT residence expenses and other Marital Trust expenses from the Family Trusts.

The petition went on to allege that Wife filed her two Creditor's Claims "without probable cause in violation of the No Contest Clause," and requested the court "determine that any

---

[10] At the hearing on the anti-SLAPP motion, and again at the hearing on attorney fees, Wife's counsel argued that Wife had, in fact, filed suit on the Creditor's Claims, and that those suits were still pending. When pressed on this by the trial court, Wife counsel explained that she was referring to her petition to remove the trustees, and a petition to compel them to follow the provisions of the ILIT. In her brief on appeal, Wife concedes that, after her Creditor's Claims were rejected, she "took no other action related to the creditor's claims."

12

and all of [Wife's] interest in [Decedent's Trust] be deemed forfeited, and further determine that any and all bequests or devises and any trust created under [Decedent's Trust], provided to or established for the benefit of [Wife] is revoked."

**5.      *Wife's Anti-SLAPP Motion***

   A.      *Overview of Anti-SLAPP Procedure*

An anti-SLAPP motion presents a means by which a defendant (Wife), sued for conduct in furtherance of the constitutional right of petition or free speech, can place the burden on a plaintiff (Children) to establish that there is a probability of prevailing on the claim or face early dismissal of the action.  (Code Civ. Proc., § 425.16, subd. (b)(1).)  If the defendant (Wife) first establishes a prima facie showing that a claim is based on so-called "protected activity" (Creditor's Claims), the burden switches to the plaintiff (Children) to establish the lawsuit (no contest/ disinheritance petition) has at least minimal merit.  (*Urick v. Urick* (2017) 15 Cal.App.5th 1182, 1191.)

Before a trial court may proceed to the second prong, the moving defendant must satisfy the first prong – that is, establish that the cause of action arises from protected activity, as the term is defined by statute.  Code of Civil Procedure section 425.16, subdivision (e) is the operative provision and describes four categories of protected speech and conduct, including:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, . . . ."

13

B.    *Wife's Motion*

Wife argued that her Creditor's Claims were protected litigation activity under subdivisions (e)(1) and (e)(2) quoted above, and Children do not disagree.  (See *Key v. Tyler* (2019) 34 Cal.App.5th 505, 518 [anti-SLAPP applies to no contest petitions]; *Urick v. Urick, supra,* 15 Cal.App.5th 1182, 1185-1186 [same].)

She then turned to the second part of the anti-SLAPP analysis:  whether Children could establish that their no contest/ disinheritance petition had minimal merit by showing that Wife's Creditor's Claims lacked probable cause.  Wife argued that they could not do so for two reasons.  First, she argued that the no contest clause exempted her and she therefore could not violate it as a matter of law.  Second, she argued that the course of failed negotiations between her and Children demonstrated that her Creditor's Claims had probable cause as a matter of law.  Wife supported her probable cause argument with declarations of herself and counsel setting forth the contentious history of the dealings between the parties after decedent's death, with exhibits documenting the disagreements.[11]

---

[11]    To some extent, the attached exhibits did not support the characterization they were given in Wife's counsel's declaration.  For example, Wife's counsel asserted that Children's counsel "misrepresented the law regarding premarital waivers of an ERISA benefit," – a statement purportedly supported by e-mails attached as Exhibit L.  The Exhibit L e-mails contain no discussion of the law regarding such waivers.

C.    *Children's Opposition*

Children did not submit any evidence in connection with their opposition; they took the position that they could establish minimal merit based on the Creditor's Claims and the terms of Decedent's Trust alone.

As to Wife's exemption from the no contest clause, Children took the position that it meant only that Wife could not be disinherited from the life estate in the residence, which was the only asset in the Marital Trust. They argued that she could still be disinherited from the Household Items gift, and her right to have the Family Trusts fund residence-related expenses if the ILIT proves inadequate.

On the issue of whether the Creditor's Claims were filed without probable cause, Children argued they were deficient on their face. The claims contained no information or documentation to support the amounts claimed ($1,000,000 and $2,000,000). They further argued that the $2,000,000 Creditor's Claim was an improper trust contest, which actually sought reformation of the terms of Decedent's Trust, in the form of a Creditor's Claim.

D.    *Wife's Reply*

In reply, Wife argued that Children's failure to support their opposition with any evidence was fatal to their opposition, as they have the burden of proving their claims had minimal merit.

She also argued that the language exempting "[Wife] with respect to the [Marital Trust]" from the no contest clause applied not only to the life estate in the residence, but also the right to have non-ILIT expenses covered by the Family Trusts – as that provision was found in Article VII, governing administration of

15

the Marital Trust. In other words, the right to have ILIT expenses covered by the Family Trusts was part of article of Decedent's Trust setting forth the functioning of the Marital Trust; so Wife believed that right was safe from disinheritance, since the no contest clause exemption applied to the entirety of the Marital Trust.

E. *Hearing*

At the August 9, 2022 hearing, argument focused on: (1) whether Wife had probable cause to file the Creditor's Claims; and (2) to what extent her exemption from the no contest clause barred the disinheritance petition.

As to the first – probable cause to file the Creditor's Claims – the court believed that, preliminarily, the fact that Wife did not pursue the Creditor's Claims following their denial gave rise to an inference that the claims were not well presented. In addition, the court observed that the amounts sought in the Creditor's Claims were "extraordinary numbers" that "do not appear to have any – to bear any relationship to reality." Wife argued that the numbers were prospective; they "had to be speculative" because she did not know how much longer she would live and how many future benefits she would be denied.

Turning to the second point, the exemption clause, the trial court initially observed that the clause exempted the Marital Trust from the no contest clause, so the only thing from which Wife could be disinherited was Decedent's (main) Trust, not the Marital sub-trust. "And what that is worth at the end of the day, I don't know." The parties agreed that the Marital Trust was

16

exempt from the no contest provision, but disagreed as to the scope and intent of that exemption.[12]

As we shall explain, it was at this point that the case took an unusual turn. The focus of the argument should have been on whether Children had a probability of prevailing on their petition to disinherit Wife from *some part of Decedent's Trust*. Instead, it turned to whether Children's petition sought, in part, to disinherit Wife from the Marital Trust from which she concededly could not be disinherited. The trial court looked at the language of the prayer in the disinheritance petition, and concluded it was "fairly broad." Wife argued that since Children sought to disinherit her from Decedent's Trust and any trust created under it, this included the Marital Trust and she must therefore prevail on her anti-SLAPP motion to the extent the petition sought to disinherit her from the Marital Trust. The court agreed. Children's counsel offered a "clarification" that the petition did not seek to disinherit Wife from the Marital Trust, and requested the court deny the anti-SLAPP motion on that basis. There was some discussion as to how such a clarification should proceed – perhaps by amendment or stipulation. No resolution was reached and the court took the motion under submission.

---

[12] Children's counsel, who had drafted Decedent's Trust, represented that the Marital Trust exemption from the no contest provision was inserted only for tax purposes, to preserve the marital deduction, and was not intended to go beyond the Marital Trust itself.

F.    *Ruling*

On August 12, 2022, the court issued its ruling denying the anti-SLAPP motion.

The court began by taking judicial notice of the pleadings in the Probate matter, which included the Creditor's Claims themselves.  Next, the court concluded that Children had a probability of prevailing on the issue of whether the Creditor's Claims had been filed without probable cause, given that (1) Wife did not pursue them after their denial; and (2) Wife's own exhibits demonstrated she had lost, at most, about one tenth of the $3,000,000 she sought in those claims.

Wife's remaining argument was that the disinheritance petition sought to disinherit her from everything, including the Marital Trust, which was exempted.  The court agreed that the complaint could be construed as seeking to disinherit her from the Marital Trust, as well as Decedent's Trust in general.[13]  The court explained, "That the Marital Trust is not subject to the No Contest clause is important to [Wife's] Motion because if the [Disinheritance Petition] in fact seeks to disinherit her from the Marital Trust, the [Disinheritance Petition] would not even have minimal merit, thus obligating the court to grant the Motion to Strike.  At the hearing, [Children's] counsel stipulated on the record that they were not seeking to disinherit [Wife] from the

---

[13]    The trial court mistakenly construed the disinheritance petition as also seeking to disinherit Wife from the ILIT.  Later, at the hearing on cross-motions for attorney fees, Children's counsel would represent that the ILIT is a separate trust with its own proceedings in Probate Court, and that the disinheritance petition in this case did not seek to disinherit Wife from the ILIT.  The court accepted the correction.

Marital Trust and therefore offered what is essentially an amendment to their prayer." The court recognized authority exists prohibiting amendment of a complaint in response to an anti-SLAPP motion, but found that caselaw distinguishable. With that amendment permitted, the court denied the anti-SLAPP motion.

Following entry of the order denying the anti-SLAPP motion, Wife filed a timely notice of appeal.

6. *Cross-Motions for Attorney Fees*

The anti-SLAPP statute provides, "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] Section 128.5." (Code Civ. Proc., § 425.16, subd. (c)(1).) Both parties sought their attorney fees under this section.

Wife argued that she should be considered the prevailing party on the anti-SLAPP motion, as she had achieved her litigation objective of withdrawal or dismissal of the claim to disinherit her from the Marital Trust.[14] She sought $51,440 in attorney fees.

_____

[14] In her briefing on the attorney fee motions, Wife took the position that, since she could not be disinherited from the Marital Trust, the sole issue remaining was whether she could be disinherited from the Household Items gift. The Children responded that the scope of the Marital Trust exemption was still at issue, as they had not amended away their prayer to disinherit her from the right to collect non-ILIT residence expenses from the

19

Children argued that not only were they the prevailing party, but they were entitled to their fees because Wife's anti-SLAPP motion was frivolous and utterly devoid of merit. They agreed that the No Contest clause exempted the Marital Trust, but argued the disinheritance petition was still proceeding as to the remainder of Decedent's Trust. They sought $41,250 in fees.

At the hearing on the attorney fee motions, the trial court stated that the result of the anti-SLAPP motion was a denial, and that if Wife achieved anything "it was the elimination of the prospect, which there really was no prospect, that she was going to be disinherited from the marital trust." The court suggested that this was of no practical benefit, as Children easily conceded they were not seeking to disinherit her from the Marital Trust, despite the broad language in their disinheritance petition. Wife argued that she had obtained a huge victory, because all of her rights flow through the Marital Trust, and she valued that trust, and her anti-SLAPP victory, in excess of $25 million.[15] The court disagreed, taking the position that the only thing Children did was "essentially tighten up the prayer in terms of what they were trying to accomplish," and that Children never truly sought to disinherit her from the life estate in the house.

---

Family Trusts. In any event, on appeal, Wife now argues that she cannot be disinherited from the Household Items gift either.

[15] When asked what assets are in the Marital Trust that amount to $25 million, Wife identified the house at $16.5 million and the $8.4 million in the ILIT which "is to be held exclusively to fund whatever the marital trustees deem an expense to her cost-free occupancy" of the house.

Turning to Children's motion, the court believed that several of the positions taken by Wife in her anti-SLAPP motion were frivolous – particularly that she had probable cause for the huge amounts sought in her Creditor's Claims.

After taking the motions under submission, the court denied Wife's motion on the basis that she did not prevail on the anti-SLAPP motion. The court took issue with Wife's claim that the Marital Trust contained $25 million, in that she was conflating the Marital Trust with the ILIT. "In fact, what [Wife] wants is everything in the ILIT, notwithstanding that she is only entitled to 'sums due on account of real property taxes, maintenance and insurance directly related to the [Property].' [Citations.] This effort to conflate the Marital sub-trust with the ILIT allows [Wife] to cleverly bootstrap her claim that she achieved practical success by her anti-SLA[P]P motion because she salvaged her right to receive the $8.4 million in the ILIT. [Citations.] [¶] Nothing could be further from the truth. [Children] have no obligation to deliver $6 million [or] any other undifferentiated sum to [Wife] and/or her attorney. They have a continuing obligation under the ILIT to pay the reasonable costs of maintaining the Property on a periodic basis, nothing more, nothing less."

Turning to Children's attorney fee motion, the court recognized that the test for whether a motion is frivolous is an objective one, and asks if a reasonable attorney would agree that it was totally devoid of merit. The court concluded that there were several aspects of Wife's motion that meet this standard, specifically: (1) Wife's argument that her $3,000,000 in unsubstantiated Creditor's Claims did not trigger the no contest clause; (2) Wife's argument that the no contest clause did not

21

apply to her *at all*; and (3) Wife's argument that Children had to present their own evidence of minimal merit, and could not rely on Wife's exhibits (including the Creditor's Claims themselves). As to Wife's argument that her motion was not frivolous as it achieved the removal of the Marital Trust from the disinheritance petition, the court concluded that this could have been achieved with a quick phone call or letter, as Children never challenged this point and it was not at issue. The court concluded it was appropriate to award sanctions for those parts of the anti-SLAPP motion that were frivolous, and awarded attorney fees in the amount of $35,850 from Wife.

Wife filed a timely notice of appeal of the attorney fee orders. We consolidated the appeals for briefing, argument, and decision.

## DISCUSSION

### 1.    *Standard of Review*

In this case, the first prong of the anti-SLAPP analysis – a cause of action based on protected petitioning activity – is conceded, so we turn to the second prong:  whether Children made a sufficient showing of probable success on their claims. "We consider that issue de novo.  [Citation.]  To survive anti-SLAPP scrutiny, a plaintiff need only establish their cause of action has 'minimal merit.'  [Citation.]  Applying a 'summary-judgment-like' test [citation], we accept as true the admissible evidence favorable to [plaintiff], and evaluate [defendant's] evidence only to determine whether it defeats [plaintiff's] showing as a matter of law.  [Citations.]  In other words, we determine 'whether a prima facie showing has been made that would warrant the claim going forward.'  [Citations.]" (*Cuevas-*

22

*Martinez v. Sun Salt Sand, Inc.* (2019) 35 Cal.App.5th 1109, 1117.)

## 2. *Anti-SLAPP Applies to Claims Only*

At the hearing on the anti-SLAPP motion in this case, the court's attention was directed to the disinheritance petition's prayer for relief, and whether that prayer sought an improper or overbroad remedy – that is, to disinherit Wife from the Marital Trust. But an anti-SLAPP motion cannot be directed toward a pleaded remedy.

The anti-SLAPP statute itself states that, "[a] cause of action" against a person arising from protected speech or petitioning activity shall be subject to a motion to strike. (Code Civ. Proc., § 425.16, subd. (b)(1).) But, as our Supreme Court recognized, "cause of action," may refer to distinct claims for relief in a complaint (e.g., first cause of action, second cause of action) or it may refer generally to a legal claim possessed by an injured person even when no pleading has been filed. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381-382.) In *Baral*, the court was concerned with so-called "mixed" causes of action, where a plaintiff pleaded a cause of action based on both protected and unprotected activity. The court concluded that, in such a case, the anti-SLAPP motion should not be directed to the cause of action in its entirety, but only that portion of the cause of action that constitutes a "claim for relief founded on allegations of protected activity." (*Id.* at p. 382.)

Our Supreme Court explained, "The scope of the term 'cause of action' in section 425.16(b)(1) is evident from its statutory context. When the Legislature declared that a 'cause of action' arising from activity furthering the rights of petition or

23

free speech may be stricken unless the plaintiff establishes a probability of prevailing, it had in mind *allegations of protected activity that are asserted as grounds for relief.* The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy. By referring to a 'cause of action against a person arising from *any act* of that person in furtherance of' the protected rights of petition and speech, the Legislature indicated that *particular* alleged acts giving rise to a claim for relief may be the object of an anti-SLAPP motion. (§ 425.16(b)(1), italics added.)" (*Baral v. Schnitt, supra,* 1 Cal.5th at p. 395.)

The California Supreme Court further refined the appropriate target for an anti-SLAPP motion in *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*). In that case, a doctor sued a hospital alleging unlawful retaliation. The doctor alleged 19 distinct retaliatory acts (or courses of conduct). The high court held that the proper anti-SLAPP analysis involved looking at each alleged retaliatory act to determine whether it constituted protected activity and, if so, whether the plaintiff could demonstrate that each such act was taken for retaliatory purposes (i.e., show minimal merit to the claim based on that act). (*Id.* at pp. 1009-1010, 1012.)

In her opening brief on appeal, Wife argues that, under *Bonni*, Children "must satisfy the second step of the SLAPP analysis as to each and all trusts against which they seek to enforce a no contest clause." But this is not what *Bonni* holds. *Bonni* requires the plaintiff to establish a probability of prevailing as to each claim based on protected activity, not as to

24

each remedy sought for that claim.[16]  Indeed, other cases have held that a remedy is not an appropriate target for an anti-SLAPP motion.  (E.g., *Golden Gate Land Holdings LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 91 [claim for injunctive relief is not a cause of action but a request for a remedy which is not subject to an anti-SLAPP motion]; *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1392 [anti-SLAPP motions are directed to causes of action, not remedies]; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162 [same].)

Here, Children allege a single cause of action to disinherit Wife from Decedent's Trust due to her pursuit, without probable cause, of two Creditor's Claims.  We therefore must determine only whether Children have demonstrated minimal merit to their cause of action to disinherit Wife based on her pursuit of those claims.  Children were required to demonstrate a probability of prevailing on their claim to disinherit Wife from some benefit to which she was otherwise entitled under Decedent's Trust; if they successfully did that, the anti-SLAPP motion was properly denied regardless of any additional, potentially overbroad, relief sought in their petition.[17]  (See *Oasis West Realty, LLC v. Goldman*

---

[16]    Under *Bonni*, it would be appropriate to consider each act of protected petitioning activity – that is, each Creditor's Claim – separately, to determine whether the cause of action arising from it has minimal merit.  Wife did not move on that basis, and the parties consistently treat the pursuit of the two simultaneously-filed Creditor's Claims as a unified whole.

[17]    For this reason, we need not address Wife's argument that the trial court improperly permitted Children to amend their disinheritance petition at the hearing on the anti-SLAPP motion.

(2011) 51 Cal.4th 811, 818, 822, 826 [plaintiffs alleged damages in excess of $4 million; establishing a probability of prevailing on $3,000 of damages was sufficient to establish damages and satisfy their second prong burden], limited on other grounds by *Baral v. Schnitt, supra,* 1 Cal.5th at pp. 391-392.)

**3.      *Children Have Demonstrated a Probability of Prevailing***

With the inquiry properly focused, we consider whether Children have demonstrated the minimal merit necessary to defeat Wife's anti-SLAPP motion.

Children seek to disinherit Wife under the no contest clause of the Decedent's Trust. The language of that clause provides it is triggered by the filing of a creditor's claim without probable cause. It further defines probable cause as existing if "at the time of filing a Contest, the facts known to the Contesting Beneficiary would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery."

Evidence of a lack of probable cause exists on the face of the Creditor's Claims themselves.[18] The governing statutory scheme provides that a creditor's claim shall be supported by an affidavit. If the claim is due, the affidavit shall set forth the facts

Any such amendment related only to remedy and was therefore irrelevant to the resolution of the anti-SLAPP motion.

[18] In Wife's opening brief on appeal, she declines to address this issue, arguing that since she is exempt from the operation of the no contest clause, it is irrelevant. After Children addressed the issue in their respondents' brief in an abundance of caution, Wife argued it in her reply.

26

supporting the claim and the amount of the claim; if the claim is not due or the amount not yet ascertainable, the affidavit shall set forth only the facts supporting the claim. (Prob. Code, § 9151, subds. (a)(2) & (a)(3).) Here, Wife's first Creditor's Claim sought $1,000,000, but the facts she set forth did not support a claim in that amount, and her own documents submitted in connection with the anti-SLAPP motion demonstrated her claimed losses did not reach that amount. Her second Creditor's Claim sought $2,000,000, but the facts she set forth did not support a cash claim at all, but instead sought reformation of Decedent's Trust. At the hearing on the anti-SLAPP motion, Wife conceded that the amounts she claimed were "speculative," and argued that they had to be, because her Creditor's Claims were prospective. But the statute does not require a creditor's claim to set forth an amount when "the claim is not due or contingent, or the amount is not yet ascertainable." (Prob. Code, § 9151, subd. (a)(3).) In short, Wife was not required to state amounts in her Creditor's Claims, but instead chose to submit claims for large, speculative sums. Moreover, once her Creditor's Claims were denied, Wife did not commence action on them, which gives rise to an inference that she knew her claims were unlikely to succeed. Taken together, this is sufficient evidence to establish a prima facie case that the Creditor's Claims were submitted without probable cause.[19]

We next turn to remedy, that is, is there something from which Wife could be disinherited? The no contest clause provides

---

[19] It may be that, at trial on Children's disinheritance petition, the court will conclude the claims were supported by probable cause. But that is not the issue on anti-SLAPP.

27

that when a contesting beneficiary pursues a Creditor's Claim without probable cause, "then any share or interest in the trust estate, any bequest or devise and any trust created under this Trust, provided to or established for the benefit of the Contesting Beneficiary, is revoked."  As Wife is to receive multiple benefits under Decedent's Trust – at the very least, including the Household Items and the Marital Trust – the existence of a remedy is established.

Wife argues, however, that the exemption clause defeats the disinheritance action entirely.  The clause provides:  "[T]his Article shall not be applicable to [Wife] with respect to the [Marital Trust]."  On appeal, Wife asks us to interpret this clause de novo.  Children argue similarly.  But we are here only on an appeal from an anti-SLAPP motion, and resolving an issue as critical as the scope of this exemption is unnecessary at this early stage of the litigation.

Throughout this case – both before the trial court and this court – a variety of possible interpretations have been sought by the parties.  At the most extreme, Wife argues in her appellate briefing that the exemption renders the no contest clause inapplicable to Wife entirely, interpreting it as meaning the no contest clause does "not apply to [Wife] and the Marital Trust."  At the other end, Children argue that the exemption simply means Wife cannot be disinherited from the life estate in the residence provided by the Marital Trust, but can lose all other benefits related to the Marital Trust, as well as other provisions of Decedent's Trust.  In between lies the possibility that Wife cannot lose any of the benefits discussed in Article VII – the administration of the Marital Trust, but can be disinherited from

28

the Household Items gift, which is outside the Marital Trust provisions entirely.

There are two reasons it is premature for us to interpret the exemption clause at this stage. First, although the parties did not offer extrinsic evidence as to its interpretation on the anti-SLAPP motion, it is apparent that such evidence exists. Children's counsel, who drafted Decedent's Trust, represented at the hearing that the exemption clause was intended only to preserve the marital deduction, suggesting it should be interpreted with that goal. Also, the ILIT contains a no contest provision that explicitly mentions Wife, which possibly undermines Wife's argument that the no contest exemption in Decedent's Trust was intended to protect Wife's interests entirely.[20] Second, and more important, it is unnecessary to interpret the exemption clause. As long as Children's position has minimal merit, the anti-SLAPP motion was properly denied.

Here, the language of the exemption clause is easily amenable to the interpretation that it applies only to the Marital Trust. Indeed, although the precise limits of what is and is not included in the Marital Trust for these purposes are subject to dispute, the plain language of the clause exempts "[Wife] with respect to the [Marital Trust]." This interpretation, which is clearly reasonable, results in the Household Items gift being outside the scope of the exemption. As such, the Disinheritance

---

[20] With no citation to the record, Wife states that the exemption was intended "to ensure that [Wife's] rights and entitlement to cost-free residence in the [house] could not be challenged by [Decedent's] . . . children from a prior marriage . . . ." The fact that Wife could be disinherited from the ILIT suggests that this is not the case.

29

Petition has minimal merit, as it seeks to disinherit Wife from that gift, among others.[21] That is all that is necessary to defeat Wife's anti-SLAPP motion, and the trial court did not err in denying it.

**4.     *Attorney Fees***

Wife contends the court erred in denying her attorney fees as a partially-prevailing party on the anti-SLAPP motion, and also in granting fees to Children for her pursuit of a frivolous motion.

A.     *Wife Did Not Prevail*

"[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion.  The determination whether a party prevailed on an anti-SLAPP motion lies within the broad discretion of a trial court. [Citation.] We review this determination on an abuse of discretion standard."  (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340.)

---

[21]     Wife argues against this result on the basis that her Creditor's Claims did not relate to the Household Items gift, but only the Marital Trust.  In other words, she interprets the exemption as exempting the Marital Trust from *prohibited contests*, not the *resulting disinheritance*.  This, too, will have to be resolved as litigation on the disinheritance petition proceeds. But even if this interpretation prevails, Children's disinheritance petition is not necessarily barred, because Wife's second Creditor's Claim, which sought reformation of Decedent's Trust to the extent it was subject to early termination, can be seen as challenging more than just the Marital Trust.

The trial court did not abuse its discretion in determining Wife was not the prevailing party. Wife argued that she achieved her litigation objectives due to the fact that Children, in some way, clarified that they were not seeking to disinherit her from the Marital Trust. Setting to one side the fact that Children and Wife vociferously disagree as to what it means to disinherit Wife from the Marital Trust, Wife is not the prevailing party because the scope of the remedy Children sought is simply immaterial to the resolution of the anti-SLAPP motion. Any clarification to the prayer in Children's disinheritance petition arose from a misunderstanding of the showing necessary to defeat an anti-SLAPP motion, and was not a partial victory on the motion at all.

B. *The Court Erred in Awarding Fees to Children*

The anti-SLAPP statute provides that "[i]f the court finds that a special motion to strike is frivolous . . . , the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] Section 128.5." (Code of Civ. Proc., § 425.16, subd. (c)(1).) The "shall" is mandatory; if the court finds the anti-SLAPP motion was frivolous, an award of fees is required. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 198-199.) "A determination of frivolousness requires a finding the anti-SLAPP 'motion is "totally and completely without merit" [citation], that is, "*any reasonable attorney would agree such motion is totally devoid of merit*." [Citation.]' [Citation, italics added.] We review the trial court's order for an abuse of discretion. [Citation.]" (*Id.* at p. 199.) An award of partial attorney fees for pursuit of a frivolous anti-SLAPP motion is appropriate when the anti-SLAPP motion was frivolous in part. (*Nirschi v. Schiller* (2023) 91 Cal.App.5th 386, 407-409 [partial award of fees appropriate when defendant

31

directed anti-SLAPP motion to multiple causes of action, several of which clearly did not arise from protected activity].)

Here, the trial court concluded that there were "several aspects" of Wife's anti-SLAPP motion "that any reasonable attorney would agree were devoid of merit." Specifically, the court believed Wife took the following frivolous "positions in support of her motion:" that her $3 million in Creditor's Claims were necessarily supported by probable cause; that the Trust's no contest provision does not apply to Wife at all; and that Children could not rely on Wife's evidence (the Creditor's Claims themselves) to establish their disinheritance petition had minimal merit.

We cannot conclude sanctions were appropriate here. First, while we agree that sanctions can be awarded when an anti-SLAPP motion is frivolous in part, we question whether it would impermissibly chill zealous advocacy if sanctions can be imposed for taking a frivolous "position in support" of a motion otherwise based on non-frivolous (although non-meritorious) arguments.

Moreover, it is apparent that, at the very least, Children were overreaching in their disinheritance petition, seeking to disinherit Wife from the entirety of decedent's trust when, as they now concede, she cannot be disinherited from her life estate in the house. While some of Wife's arguments indisputably lacked merit, her anti-SLAPP motion, as a whole, was directed to the single cause of action in a disinheritance petition that, on its face, improperly sought to take away her right to live in her home. To be sure, we have held the motion to have been procedurally improper to the extent it was directed toward only a portion of the remedy sought. But we cannot say any reasonable

attorney would have known not to bring the motion, especially when Children did not argue the motion was improper on this basis, nor did the trial court deny it on that ground. Under the circumstances, the award of fees constituted an abuse of discretion.


## DISPOSITION

The orders denying the anti-SLAPP motion; and denying Wife prevailing party attorney fees are affirmed. The order awarding Children attorney fees for Wife's pursuit of a frivolous anti-SLAPP motion is reversed. The parties are to bear their own costs on appeal.



LEE, J.*


WE CONCUR:



MOOR, Acting P. J.                    KIM, J.


*       Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.